JOHN A. COLLIER, one of the Executors of the will of STEPHEN MUNN, deceased, Appellant, v. WILLIAM H. MUNN and others, Repondents.

An executor cannot receive from the estate, any greater compensation than the statute commissions, for his own services, however meritorious or extraordinary they may be.

One of the executors of a will, therefore, who is an attorney and counselor-at-law, cannot be allowed any fees whatever from the estate, for professionally defending and conducting an action brought against the estate, although requested by his co-executors to appear in such action and undertake such defence, with a promise of compensation; and although the legatees and next of kin united in such request. Accordingly, where C., a counselor-at-law, who was one of the executors of M., was requested by his co-executors, who promised compensation from the estate, to defend an action of ejectment brought against a grantee of the testator, with warranty, who had given notice to the executors to defend, and the legatees and devisees had also united in a request to C. to undertake such defence, and C. thereupon undertook the case, tried it at Circuit, argued it at General Term and at the Court of Appeals, and after a second trial, negotiated an advantageous settlement of the litigation.—*Held*, that the surrogate, on the settlement of the executors' accounts, properly refused to allow anything to C. for such legal services (JAMES, MURRAY and LOTT, JJ., *contra*).

(Argued June 21, 1869, and decided September 24, 1869.)

APPEAL from judgment of the Supreme Court, in General Term, in the first district, affirming decree of the surrogate of the city and county of New York. The appellant, one of the executors of the last will and testament of Stephen B. Munn, deceased, at the special written request of his co-executors, containing an assurance that he would be entitled to a reasonable and just compensation out of the estate, had rendered important and useful services as counsel in defending an action involving the liability of the estate to a large amount. Several of the legatees had also united in a request, which, though not very specific in form, might fairly be taken to import a similar request, but without any intimation on the subject of special compensation. After two trials, and an argument in the General Term of the

Supreme Court, and an argument in the Court of Appeals, a settlement was effected, deemed largely advantageous to the estate.

For the special services of the appellant as counsel he claimed, on the settlement of the accounts of the executors, a just compensation by way of counsel fee, and the executors had allowed to him the sum of $3,000, which sum an auditor had, on a former accounting, found to be just and reasonable.

The accounts were referred for examination, and notwithstanding certain objections by the guardian *ad litem* for certain infant respondents, including an objection to this counsel fee, were reported correct.

As to the value of the services and their usefulness to the estate there appeared no doubt, and it was not contended that the amount claimed was more than a reasonable compensation.

The surrogate disallowed the claim, and from his decree, settling the amounts on the footing of his rejection of the allowance for counsel fee, the appeal was taken. The Supreme Court affirmed the decree, and the question whether the executor is entitled to this allowance is brought to this court by his further appeal.

*Joseph P. Daly* and *James Emott,* for the appellant, cited *Collins* v. *Hoxie* (9 Paige, 87); *Lansing* v. *Lansing* (45 Barb., 189).

*Richard M. Henry,* for certain infant respondents, and *Morris S. Miller,* for other infant respondents, cited *Green* v. *Winter* (1 John. Ch. R., 37); *Manning* v. *Manning* (1 John, Ch. R., 534); *Ayliff* v. *Murray* (2 Atk. 60.); *Moore* v. *Frowd* (3 M. & Cr., 48); 6 Paige, R., 15, 412.

WOODRUFF, J. The propriety of the payment to Mr. Collier, the appellant, of the sum claimed for his valuable services as counsel, in the protection of the estate from heavy

loss, by defending the action referred to in these proceedings, could not be questioned, if there was no settled rule and no manifest policy which forbade it; and in this particular case, upon the facts disclosed, if an exception could be made to what I conceive to be a wise and well settled rule, I should be disposed to make it an exception.

But I cannot perceive that services of counsel stand upon any other footing than any services which an executor is not, in virtue of his office, bound to render in person. They are what have been in the cases styled "extra services," *i. e.*, services which, although they pertain to the well conduct of the business of the estate, are not devolved upon the executors personally. The executors may employ other persons to render them, and may allow to such other persons a just compensation therefor, and such allowance they may charge to the estate. For many purposes, the executors may employ agents and assistants, and, when necessary, attorneys and counsel, and the extent to which they may do this will depend upon the situation of the estate and the greater or less occasion for such services, as do not properly belong to the executors to render.

Thus the affairs of an estate may be so extensive or complicated as to warrant the executors in employing a book-keeper, or an agent to let real estate entrusted to their management, or to collect rents, or an agent to make other collections, make journeys for the collection or protection of the assets, or for the performance of other duties.

Although the services of counsel, skilled in the conduct of important litigations, are of a higher grade than some of those suggested, they do not, in respect to the question whether the executor may himself claim compensation therefor, if rendered by himself, stand upon any other ground.

The question is one often heretofore considered, viz.: Can an executor claim to be allowed for "extra services," rendered by himself in the conduct of the affairs of the estate, a compensation beyond the commissions allowed by statute?

More than fifty years ago, it was held by Chancellor KENT,

HAND — VOL. II.    19

upon a careful review of the subject, that a trustee is not
entitled even to commissions on his sales, or receipts, or pay·
ments, or any compensation for his care or pains in the exe
cution of his trust, but only to an allowance per diem for
his services and his expenses of travel. He rejected a charge
by way of retaining fee as counsel. He says : " Nothing
can be stronger or more explicit than the uniform language of
the English Court of Chancery upon this point ; and if I were
even free from the weight of authority, I should hesitate
greatly before I undertook to question the policy or wisdom
of the rule. (*Green* v. *Winter*, 1 J. Ch. R., 26.)   And
again, shortly thereafter, in another case, he held distinctly
that an executor or trustee is not entitled to commissions or
compensation for his services in the execution of his trust ;
and again he reviewed the prior history of the subject with
his usual ability and clearness.

This promulgation and sanction of the rule of the English
Court of Chancery undoubtedly led the legislature· to con-
sider whether some relaxation of the rule was not expedient,
lest it should be difficult to find suitable persons to dis-
charge the confidential trusts of executorship or administra-
tion, without any reward therefor, and the act of 1817 was
passed, giving the chancellor a discretion to allow compen-
sation.

And, therefore, in order that the evils which lay at the
foundation of the rule might be avoided, and no danger to
legatees or next of kin arise from any temptation to do any
thing in the administration for the mere sake of the com-
pensation to accrue thereby, the chancellor fixed the com-
pensation for services at a percentage upon the amount of
the receipts and payments, wholly irrespective of any ques-
tion whether the executor had been put to more or less pains
or trouble in the administration.   (See rule 3 J. Ch. R.,
630.)

Under this rule, it was held by Chancellor SANFORD, that
an executor is entitled to reimbursement for all proper expenses
in the administration.   That he may employ agents, clerks,

&c., whenever the business of the estate requires it, and will be allowed their reasonable compensation.

But for his own services, his compensation must be confined to the allowance of a fixed rate, by way of commissions, as settled by the court. That these commissions are in full for all his services in the discharge of the trust. (*Mc-Whorten* v. *Benson*, 1 Hopk., 28.)

The Revised Statutes, in substance, enacted the rule of the Court of Chancery on the subject (2 R. S., 93, § 58, *et seq.*), and shortly thereafter, Chancellor WALWORTH declared and held, that this exposition of the previous law by Chancellor SANFORD was " now adopted and sanctioned by the legislature in the recent revision of the statutes." (*Vanderheyden* v. *Vanderheyden*, 2 Paige, 287.)

Notwithstanding these decisions, and the grounds in a wise policy, upon which the rule is founded, it seems to have been still insisted that the commissions were intended as compensation only for the responsibility, and the general supervision, and the receipt and payment of moneys. And that for extra services further compensation might be allowed.

This claim overlooked the obvious intent to make the sums, called commissions, compensation, not for the service of receiving and paying, but compensation for the whole services *measured* by a *fixed standard*. Sometimes it would, doubtless, be quite inadequate to compensate for the labor, care, and pains bestowed. Sometimes the compensation would be liberal. But the point of importance was to make the amount in each case definite, so that there should be no possible temptation of pecuniary interest to influence the conduct, or mislead the discretion of the executor or other trustee in similar relations.

Hence, the chancellor, in the matter of the Bank of Niagara (6 Paige, 213), held that a receiver is not entitled to charge for counsel fees to himself, in suits prosecuted or defended by him as attorney and counsel. The costs legally taxable by statute he is entitled to only. Nor is he entitled to any allowance in the character of counsel for himself, or

his co-receiver, in relation to any other matter. I am quite unable to perceive why this decision, if followed, does not dispose of the case. Receivers were entitled to the same compensation as executors.

It reiterates the proposition, that even in respect to such services as executors are not personally bound to render, but for which they may properly employ and pay others, they cannot claim compensation themselves. And it states the danger of subjecting executors, &c., to the influence of any other rule.

And once more, in *Church* v. *Eckford* (8 Paige, 412), this subject of compensation for extra services by an executor, and the right or power of the co-executors to pay it, or bind the estate to make payment, was considered by the chancellor. He holds, that without an authority in the will of the testator for that purpose, executors are not authorized to employ one of their number to perform *extra services* as clerk in keeping the accounts of the estate, and allow *him* a salary.

This is not on the ground, that a book-keeper may not be employed in a proper case, and paid a salary, or that it is a necessary part of the duty of the executor to keep the books himself, but on the grounds already suggested, that an executor is not permitted to make profit by his services rendered the estate, beyond the fixed compensation allowed by law.

It is not necessary to say whether there can be any circumstances so extraordinary as to create an exception to the rule, such as is supposed to be suggested by the cases in England, in which services were rendered in India or the West Indies. (1 Sim., 23 ; 2 Russ., 585; 1 Moore, Priv. Council Case, 40.) I regard the principle well founded, and the cases cited as decisive of the case now before us.

True, these were none of them decisions of the court of last resort, but in my judgment the reason they are not found affirmed there is, that their correctness has received universal approval and acceptance.

And these cases clearly settle the claim, that the formal

special employment of the appellant, by his co-executors, cannot aid him. They could not pay him what they had no right to take for like services themselves.

The consent of some of the legatees cannot bind the others, nor, of course, the infants.

It would unquestionably have been competent for the adult legatees to retain the appellant, and make such agreement for compensation as would have made them liable personally; and it being fairly made, such an agreement would be free from objection at law or in equity.

With the unreasonableness of the resistance to this claim of the appellant, which, in this case, is for a valuable service, rendered in good faith, far beyond what his duties as executor required, or with the eminent propriety of payment, by the adult legatees, for a service from which they have apparently derived so considerable a benefit, we cannot deal.

On this appeal, we can only say the judgment must be affirmed.

HUNT, Ch. J., MASON, GROVER and DANIELS, JJ., concurred with WOODRUFF, J., for affirmance.

JAMES, J., read an opinion for reversal. LOTT and MURRAY, JJ., were also for reversal.

Order affirmed without costs.