WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—December, 1881.

## CAMPBELL v. PURDY.

*In the matter of the accounting of* SAMUEL M. PURDY
*and* ABRAHAM B. ODELL, *executors, etc., of* CHARLES
CAMPBELL, *deceased.*

One entitled to a remainder after a life estate given by will is a " person
    interested in the estate," within the meaning of Code Civ. Pro., § 2726,
    permitting such a person to apply to compel an executor to settle his
    account.
Where a will directs executors to sell and convey testator's real and per-
    sonal property as soon after his death as they shall deem best, and dis-
    pose of the proceeds, the Surrogate's court has no power to order a sale
    of the realty in compliance with such direction, but, as to the person-
    alty, it is the executors' duty *to deem it best* to sell as soon as can con-
    veniently be done; and where a loss occurs in consequence of their
    neglect so to do, they are chargeable with the amount.
An attorney who is executor cannot be allowed any *costs* in actions relating
    to the estate; otherwise as to disbursements and expenses.
The sum of $200 is not an extravagant expenditure for a tombstone, where
    decedent's personal estate is $26,000.

THIS was a judicial settlement of the account of ex-
ecutors, initiated by petition of an infant interested in
the estate.

The will of the testator, admitted to probate in Jan-
uary, 1875, in substance directed the executors to pay his
debts and funeral expenses ; also to sell and convey all
his real and personal property as soon after his death as
they should deem best, and out of the proceeds to pay
the funeral expenses, debts and expenses of administra-
tion.   The balance he directed them to divide into two
equal parts, one of which they were ordered to pay to his
daughter Hannah, and to invest the other in the purchase

of real estate, to be held in trust for his son Benjamin B. Campbell, he having the right to occupy it for life with remainder to his children ; or to invest it on bond and mortgage, at his option, for his benefit during life, with like remainder.   Benjamin had a wife and several children.   For some cause, she left her husband, taking the children with her ; and she was subsequently appointed their general guardian.   She, as guardian for Charles Campbell, an infant, was the petitioner in the first instance, in this matter.   On the return of the citation, the executors filed a petition, and brought in all parties in interest.

The testator's homestead, consisting of about five acres of land with dwelling, remained unsold, the reason alleged being the depressed value of real estate.   The inventory showed personal assets to the value of about $24,000, and the account disclosed a net increase, swelling it to the sum of about $26,000.   A part of the assets was a bond and mortgage on real property, on which $16,280 remained due, when the mortgage was foreclosed; and, the sale not producing the amount due, the executors purchased the mortgaged premises, and still held them, being unable to dispose of the same advantageously.   This foreclosure suit was commenced in the life-time of the testator, through Mr. Purdy, the executor, as attorney, and proceeded so far as to the adjustment of costs, which were taxed at $422.73. After his death, the complaint was amended, and other proceedings had in the case, in which Mr. Purdy's costs were taxed at $203.32, which sum was claimed as an item of credit in the account.   Objections were filed to the account, which are discussed in the opinion ; and the

executors contended that Charles Campbell, the original petitioner, through his guardian, could only compel the filing, by them, of an intermediate account; that the account was so filed merely for the purpose of disclosing the acts of the executors and trustees, and the condition of the estate or fund in their hands; and that the estate was not in a condition for a final accounting, in consequence of their inability to convert the real estate, with advantage, into money.

JAMES R. MARVIN, *for the executors.*

BATES & HENRY, *for objector.*

THE SURROGATE.—Assuming that the executors are such testamentary trustees as are contemplated by title 6 of chapter 18 of the Code, of which there may be serious doubts, the will in this case makes them such trustees only of the share of Benjamin B. Campbell. As to Hannah's share, they are simply executors, clothed with a naked power of sale of all the real estate. Hence, they may account as executors, and may be compelled to do so. They may also be compelled by the petitioner to render an intermediate account as trustees, by virtue of section 2803, the petitioner being "a person interested in the estate or fund" of which his father is beneficiary for life. Had they rendered such an account on his petition, no decree could have been entered thereon, under that section, the account being filed merely for the information of the court and those interested in the fund.

I think too, that the petitioner had a right to proceed under section 2726, as "a person interested in the estate or fund." He is entitled to a share, in remainder, of his father's share, after the payment of funeral expenses and

debts. He is, therefore, interested to see that the exec- utors have not expended too much for the burial, monu- ment, etc., and also to see that they have not paid claims as debts, which were illegal or invalid. Could he estab- lish that they had, he would, in so far, increase the amount of the fund which he is to share, at his father's death, with the other children, of his father.

On the return of the citation, the executors properly proceeded, under section 2728, for a judicial settlement of their accounts. Hence, I regard the matter as cor- rectly before me, for the purpose of settling the accounts so far as the executors have proceeded.

The executors have never entered upon the discharge of their duties, as trustees of the share of Benjamin B. Campbell, for the reason that they have never placed themselves in a condition to do so. In order to ascertain the half of the residue of the estate, over which they were made trustees, the real estate had to be sold. This, for reasons which have been given, has not been done. It is immaterial to inquire into the sufficiency of these reasons, as this court has no power to order a sale of any real estate owned by the testator at his death. Here, at this time, only their accounts as executors are to be scrutinized. Before proceeding to do so, it may be proper to remark that the executors are directed, by the will, to convert the whole estate, real and personal, into money, as soon after the death of the testator as they should deem best. This was clothing them with a dis- cretion as to the time of sale, which, in so far as the realty is concerned, a competent forum will see is prop- erly exercised. As to the personal property, inventoried at $525.25, this court has jurisdiction to determine what,

if any, liability attaches to the executors by reason of any neglect of duty in relation thereto. This should have been sold at once by the executors, and converted into money. The will directed such conversion, and the executors should have "deemed it best" to effect it as soon as it could have been conveniently done. The proceeds would have entered into the bulk of the estate, for the purposes of the will. Instead of doing this, they suffered a portion to be consumed by those not entitled to it, and another portion to be removed and used by the wife of Benjamin B. Campbell, who separated from her husband, taking her children with her. She had no right in, or title to, these goods individually, or as guardian of her minor children. The executors will perceive that, when they eventually account to these children for the principal of the trust fund, the latter can compel them to account for at least one-half the value of these goods. The fact that this proceeding was instituted by one of these minor children can make no difference. His general guardian cannot bind him as to property of which she, as such, had no legal possession or control. The executors are not entitled to credit for the goods inventoried at $525.25.

The interest, taxes, insurance premiums and repairs belonged to the executors to pay. Benjamin B. Campbell was not made, by the will, a life tenant of any real estate of which the testator died seized, and it was the duty of the executors to properly care for and protect it, until they could effect a sale.

The item of $203.32 for costs and services of Mr. Purdy, one of the executors, must, in so far as the costs only are concerned, be disallowed. It is well settled

that an attorney, who is executor, cannot be allowed out of the estate any costs, in actions relating to the estate. He may, however, be allowed any expenses or disbursements he may have incurred or made in such actions (Collier *v.* Munn, 41 *N. Y.*, 143). There is no proof before me, showing what was the amount of those paid by him in that action. I have, however, examined the taxed bill of costs on file in the clerk's office, and find them to be $57.82. If that is conceded to be correct, he will be allowed that sum ; otherwise, I am disposed to permit the executors to introduce evidence on the subject. It may be proper to remark that, if the premises had sold for a sum sufficient to cover the amount due *and* the costs, the executor would have been entitled to receive the whole of his costs out of the proceeds. Possibly, in case of a sale by the executors, hereafter, for enough to cover the whole amount of the judgment, including costs and interest, Mr. Purdy may be entitled to the whole amount, but at present he cannot be permitted to do so.

In view of the magnitude of the estate, I do not regard the item of $200, for a tombstone, as extravagant.

Undoubtedly, the executor's duty was and is to convert into money the real and personal estate with all possible dispatch, and to pay and invest the proceeds as directed by the will, having, however, a due regard to the interests of the estate. If they could not sell the real property except at a great sacrifice, they had a right and it was their manifest duty to forbear a sale, provided there was a probability of its rising in value within a reasonable period. At the same time, it must not be

forgotten that the beneficiaries cannot have their just rights indefinitely postponed by any considerations. A sale at a great sacrifice might be more beneficial to them, than an enhanced price after years of waiting and want. The executors state that they now deem the time propitious, and design soon to effect such sales. When that is done, there will, as already suggested, be an opportunity for a more complete adjustment of the affairs of the estate. In the meantime, a decree should be entered adjusting the account, in compliance with the views herein expressed. Costs of the accounting are awarded to the executors, and a proper allowance will be made to the contestant, to be paid out of the fund.

Decreed accordingly.