## ESTATE OF HARLOW S. LOVE.

[No. 2,287; decided April 10, 1883.]

**Executor—Compensation for Legal Services Rendered by Himself.—** Where an executor is himself an attorney, he cannot claim extra compensation for the use of his legal knowledge in administering his testator's estate.

**Executor—Commissions When Value of Estate Disputed.—** Where an executor claims commissions on the appraised value of the estate, which value is disputed, his commissions should be based on the true value of the property as proved by experts on the hearing of his account.

**Executor—Performance of Decedent's Contract.—** Where an executor carries out the contract of his decedent to perform legal services, the money received therefor should belong in part to the estate and in part to the executor.

**Executor—Delay in Settling Estate.**—Negligence was not, under the peculiar circumstances of the case, held imputable to the executor, notwithstanding the administration of the estate was not closed for nearly sixteen years.

**Executor.—Where an Executor Allowed Judgment to Go Against Him** for realty which had come into his possession, he having acted in good faith, he should not be charged with the value of the lot, but only for an amount which he received in consideration of his consent to the judgment.

**Executor.—An Executor's Right to Commissions,** given by the statute, is absolute; neglect of duty, or delay in closing the administration, will not take it away.

**Executor—Commissions.—A Quitclaim of All the Executor's Interest** in his decedent's property will not operate or be construed as a waiver of commissions.

**Executor.—Where Items in an Executor's Account** are payments arising out of mortgages given by the universal devisee and legatee, they should nevertheless be allowed, where the moneys were devoted to the maintenance of the widow and family, and paid at her request, she being universal devisee.

**Executor.—Items in an Executor's Account** of expense for abstracts of title and driving squatters off of realty should be allowed, when paid for the widow's benefit and at her request, she being the universal devisee.

**Executor.—Items in an Executor's Account of Expense** of flowers for grave, of insuring personalty never in his possession, examining tax lists and recording a deed to a legatee, should be disallowed.

**Executor.—Items of Expense in an Executor's Account** for printing a brief, the amount or payees not being shown; interest on a note made by a legatee, for $100, without voucher, and tax charges without sufficient voucher, were disallowed.

**Executor.—An Item of Expense in an Executor's Account,** for redemption under tax sales, may be allowed.

**Executor.—Where Property of an Estate has been Taken by the City for a Park,** the executor should not be charged with the value of the land, but only with the amount received by him from such source.

**Executor—Commissions.—Where a Bank Loaned Money** to a universal devisee on the executor's representation that a speedy distribution could be had and he would obtain it, and the executor filed a worthless petition therefor, he is estopped from claiming commissions as against the bank.

**Executor.—An Expense of $147.50 for a Wall Around a Cemetery Lot** may be allowed as a proper and usual charge against a decedent's estate.

**Executor.—A Mortgagee of Land Inventoried in the Estate,** under a mortgage made by the universal devisee and legatee of the testator, is a party interested in the estate, and entitled to be heard upon the executor's accounts, and on any distribution of the estate. Likewise, a judgment debtor of such devisee, who has acquired, under execution upon the judgment, title to a parcel of the realty inventoried in the estate, is also a party interested in the estate; so, also, is a mortgagee of such judgment debtor.

The opinion of the court in this case was rendered upon a motion to confirm the report of John M. Burnett, referee to examine and report upon the final account of John Lord Love, executor, and the exceptions thereto, which report was filed December 7, 1882. As a general statement of the whole case (apart from the special facts considered with reference to the specific objections to the account), the following is taken from Mr. Burnett's report:

"From the proofs, both oral and documentary, and the admissions of the parties, I find the following facts:

"Harlow S. Love, the testator, died on the 15th day of March, 1866, leaving a last will by which he devised and bequeathed to his wife, Martha C. M. Love, all his estate, with the exception of a small legacy to each child, and appointed his son, John Lord Love, executor.

"The will was filed in the then Probate Court of this city and county, on the 12th day of June, 1866, and on the 28th day of September, 1866, was duly admitted to probate. Letters testamentary were issued May 16, 1867, to John Lord Love, who qualified on said day, and has ever since been executor. On the 29th day of March, 1870, an order of publication of notice to creditors was made, and on the 24th day of October, 1871, a decree showing due publication of such notice was entered and filed.

"On the 18th day of December, 1877, the executor filed in the Probate Court his petition for a distribution of the estate, setting forth he was about to make an inventory, and was 'about to file his accounts as said executor,' and containing the allegation that all the 'debts of said deceased and of said estate, and all the expenses of the administration thus far incurred,' had been paid and discharged, and that the estate was in a condition to be closed.

"The inventory was filed October 10, 1882, and no account was filed until November 1, 1882, when the present account was filed after a citation was issued by this court.

"On the 17th day of August, 1868, Mrs. Love made a mortgage to the German Savings and Loan Society (in which she was joined by John L. Love, as an individual) for $2,500; on the 23d of September, 1868, another mortgage (in which she was also joined by him as an individual) for $2,500; on the 31st day of September, 1868, to the French Bank (in which she was joined by Mr. Love as executor) for $3,000; on the 24th of November, 1869, to the German S. & L. Society aforesaid (in which she was joined by Mr. Love as an individual) for $4,500. Finally, in December, 1877, she made a mortgage to the Hibernia Savings and Loan Society to secure the payment of $30,000, which mortgage covered the lands described in the objections of the said Hibernia Bank. This mortgage was foreclosed in due course, and the title of the mortgagors to the mortgaged property finally vested in the bank by sheriff's deed, which corporation now holds the same.

"On the 3d day of December, 1878, Louis T. Lazme commenced an action against M. C. M. Love to recover certain moneys, and, on a judgment being rendered in his favor, sold under execution the property thirdly and fourthly described in the inventory. In due course of time a sheriff's deed was made, conveying the same to Leila L. Foster, the contestant herein, who is now the owner thereof, subject to mortgages made by her to the Pacific Bank, which mortgages are unpaid.

"About the year 1872, fifty-vara lot number 1 in block 599, and an irregular long strip running into blocks 521 and 600, were taken for the Buena Vista Park, under order 800 of the Board of Supervisors; and in the year 188—, a decree quieting title as against the estate was rendered in the case of Bornheimer v. Baldwin et al., for a part of the land described in the inventory.

"I find that by these transactions the entire interest of Mrs. Love, the residuary legatee and devisee, in the estate was divested, and that the contestants are interested in the estate" (pp. 2-5).

The special findings of fact and conclusions of law by the referee, with respect and directed particularly to the various specific objections and exceptions to the executor's account, are also here given, to be read in connection with the opinion of the court.

As to the value of the estate referred to in the court's opinion, the referee's report said:

"Proof was made as to the value of the lands described in the inventory, and I find the value, at the date of filing it, to be $49,000. On this amount the commissions of the executor if allowed would amount to the sum of $2,090" (p. 9).

As to the executor's right to retain the fee received in Clark v. Reese (arising out of a personal contract of decedent), the referee said:

"I further find that in February, 1866, the testator made a contract with Mrs. Clark to bring a suit against Michael Reese, and associated Alexander Campbell, Jr., with him. The suit was commenced during the lifetime of the decedent, but was not tried until after his death. Mr. Love, the executor, made no contract with Mrs. Clark or with Mr. Campbell on his father's death, but went into the case and assisted to prepare it for trial; participated in the trial; prepared amendments to the statement on motion for a new trial, and assisted generally in the case until its final disposition in the supreme court. The decedent and Mr. Campbell were to get one-half of the amount recovered, and were to divide equally among themselves. The plaintiff eventually received $6,000 in currency, and of the $3,000 coming to the attorneys, $1,500 was paid to Mr. Love. He contends the whole belongs to him—the contestants aver he holds the entire sum for the benefit of the estate.

"It is evident some part of the money belongs to the estate. The testator had performed a portion of the service by which the money was earned; on the other hand, the contract of an attorney is personal, and the relation between him and his client is severed by death. I think the executor should only be charged with $350 in gold, being one-third of the amount as near as may be" (pp. 11, 12).

As to the delay in settling the estate, which was excused by the court, the referee's statement will be found below in the quotation from the referee's report as to the executor's right to commissions (pp. 13, 14).

As to the Bornheimer lot, referred to by the court, overruling the referee, the report of the referee said:

"The suit of Bornheimer v. Love et al., Executor, was for the property firstly described in the inventory. I find the executor not only allowed judgment to be taken, but received $825 for so doing, for which he has given no account.

"While the judgment was without costs, yet, as the law requires executors to exercise the greatest care, I hold he had no right to consent to such a judgment. Having received the property in his possession, his account of its loss is not sufficient, and he must be charged with its value, which is $3,000. I recognize the fact that this is a hard case, but it seems to me the law is clear" (pp. 12-13).

As to the executor's absolute right to commissions, as held by the court, the referee's report said:

"The contestants object to any allowance of commissions to the executor, on the ground that there has been gross neglect, delay and carelessness in the administration of the estate. I find that the executor has kept no accounts whatever; that as testified to by him, the account filed was made up from vouchers and his memory; that nearly a year elapsed from the filing of the will until letters testamentary were issued to him; that nearly four years elapsed from the filing of the will until notice to creditors was published; that no inventory was filed for over sixteen years, and that no account was filed until citation was issued. It is also in proof that he is a lawyer, the only son of decedent and the residuary legatee and devisee; his mother was not acquainted with business, and was not fit to manage her affairs alone. Mr. Love was called on frequently to join his mother in the mortgages given by her, and on each occasion must have felt the necessity of a settlement of the estate. Our law contemplates the speedy settlement of estates. I feel compelled to hold, under the authorities cited by counsel, that commissions should not be allowed" (pp. 13, 14).

As to the executor's waiver of commissions claimed by objectors and contestants, the referee said:

"Contestants read in evidence a quit-claim deed from John S. Love to M. C. M. Love, dated in 1877, and executed just prior to the 'Hibernia Bank Loan,' and claim it operates, per se, as a waiver of commissions. I do not so consider it. While the deed covered all the land of the estate, it only conveyed the interest of the grantor, acquired by a prior deed from Olds, or such other as he had in the law, and not his right to commissions as executor" (p. 15).

As to payments made to the German and French Banks, arising out of mortgages given by the universal devisee and legatee, the referee found and held:

"All the items of payments made through the German Savings & Loan Society and French Bank (not specially withdrawn), and which aggregate: Paid German Bank $4,396.35, paid French Bank $943—$5,339.35, I reject, on the ground that they were payments made on mortgages given by the residuary legatee, and are not proper charges against the estate" (p. 7).

As to items numbers 18, 37 and 25; items numbers 4, 26, 86, 118 and 112; items numbers 13, 66, 72 and 80; items 82, 83, 84, 85, and item 92, referred to in the court's opinion, the referee said:

"I also reject item 4, of $7 for flowers for grave. Item 26, of $29 insurance on personal property, which the executor never took into his possession, but turned over to the residuary legatee; item 18, of $10 paid Brooks & Rouleau for abstract, which I find was for the use of Mrs. Love to secure loan from German Bank; item, 25, of $75 paid Michael Dalton, for driving off squatters and burning of fences; item 37, for $15 paid Rouleau & Mills for abstract, which I find was for Mrs. Love's purposes; item 86, of $5 paid G. F. Sharp for looking up tax lists, which was executor's duty; and also item 118, of $5 paid Hart for similar services, and item 112, of $2.25 paid for recording deed from Olds to John L. Love, on the ground that they were not proper charges against the estate.

"I also rejected item 13, for $20 paid for printing brief in Judson v. Molloy, because the testimony did not show the amount nor persons to whom paid; $50 of item 66, paid Rouleau, as interest on note made by Mr. Love, on the ground that the executor had no right to pay interest; item 72, paid Jarboe & Harrison $100, on the ground that there was no voucher, and no proof as to amount paid; item 80, paid J. P. Dameron for taxes 1871-2, $25.89, on the ground that there was no sufficient voucher.

"The items for redemption of property from tax sales 1871-2, being items 82, 83, 84, 85, amounting in the aggregate $142.64, I have allowed in part and rejected in part. The executor should have distributed the estate, as nearly six years had elapsed when the items were paid since the will was admitted to probate, or should have made a sale to provide money for taxes. I have credited him with the taxes, and have rejected the fifty per cent. required for redemption, as shown by the annexed account.

"I have rejected item 92, for $47.75, taxes 1872-73, on block 520, because there is no voucher" (pp. 7-9).

As to land taken for Buena Vista Park, the referee said:

"The executor has failed to charge himself in his accounts with any receipts of money, but admits in his report of having received $780 for property taken for Buena Vista Park. With this amount he should certainly be charged, but the contestants seek to charge him with the value of the land taken, which is estimated by an expert to have been $2,000. The executor testified that he only received the $780.20; that there were benefits assessed against the property of the estate, as well as damages awarded for the land taken, and that, according to his best recollection, the amount he received was for the difference. The public records by which the matter could be settled have been lost or destroyed, and I am compelled to decide upon the evidence as it now stands. As the executor cannot be held responsible for the loss of the records, and as the law provides for such assessments and awards, I hold that he shall only be charged with the sum received" (pp. 10-11).

As to the estoppel claimed by the Hibernia Savings and Loan Society in its favor, against the executor, the referee said:

"In 1877 the Hibernia Bank was about to loan money on mortgage to Mrs. Love. The attorney of the bank was assured by Mr. Love that there was no obstacle in the way of a speedy distribution of the property to his mother, and that he would attend to the matter. The bank's attorney required a petition for a distribution to be filed, and a letter from the clerk of the Court certifying to that fact, before the loan was passed. The petition was filed and the letter was sent, but as the document was worthless as a petition it was never acted upon. The loan was made under these circumstances. As to the bank, the executor should be estopped from claiming commissions" (p. 14).

There is also another item, not specially referred to in the opinion of the court, but as to which the action of the referee is in general terms confirmed. The item is thus set forth in the referee's opinion:

"I allow $147.50 for wall around cemetery lot (included in item 47), on the ground that it is a proper and usual charge, although the Estate of Barclay, 11 Phil. 123, is directly against such allowance. I find the rulings of our own Courts sustain my position" (pp. 9-10).

As to the fact and legal conclusion that the contestants were parties interested in the estate, and so treated by the court, the referee's statement of facts and his conclusions on that point will be found above in the first quotation from the referee's report.

### OBJECTIONS CONSIDERED BY REFEREE.

There were presented objections to the executor's account on behalf of all the parties claiming to be interested in the estate.

On November 13, 1882, Leila L. Foster filed exceptions as daughter, and successor in interest by various deeds, conveyances, etc., of M. C. M Love, the widow and residuary legatee and devisee of decedent, to the lands thirdly and fourthly · in the inventory described, upon the grounds: (1) That no

vouchers were presented in support of the account; (2) that the payments specified in the account were made with moneys obtained by M. C. M. Love from mortgages given by her on property of the estate, or moneys advanced by her and by the objector, to the executor; (3) that executor has not charged himself with various moneys received (among others, moneys received by Mrs. Love on mortgages); (4) that executor has grossly neglected and violated his duties and trust, and no commissions or compensation for extra services should be allowed him; (5) that executor has caused valuation and appraisement of the estate to be increased to three times its true value in order that his commissions may be thereby increased; (5a) that executor's services were to be free, and for the advantage of his mother, the universal devisee; that no charge for services should be allowed, as all the estate was realty, and the executor in December, 1877, released all his interest in it to his mother; (7) disbursements and advances claimed by executor are barred by sections 337, 338, 339, 343, Code of Civil Procedure; (8) the credits claimed by the executor are stale; and (9) the estate should have been closed before January 1, 1869, and so executor is not entitled to claim for advances or services.

On November 16, 1882, the Hibernia Savings and Loan Society (of San Francisco) filed objections on same grounds made by Mrs. Leila L. Foster, and also as follows: (1) Objector is successor in interest of M. C. M. Love, and has acquired her title to land in inventory described, under foreclosure of mortgage made by her to the bank to secure a sum of money borrowed; (2) "Said loan was negotiated for in part by said John L. Love, and was made upon an express agreement, personally made between said corporation and said John L. Love, that said property was free from all liabilities to said John L. Love, arising from his connection with said estate or otherwise, and that said property should be distributed to said M. C. M. Love as soon as possible after the making of said loan; and that he, the said John L. Love, would take the necessary proceedings for that purpose; and said loan was made upon the faith of said agreement." (4 [3]) Said John L. Love conveyed to said M. C. M. Love,

by deed, all his right, title and interest in and to said real property at the time said loan was made.

On November 25, 1882, objections were filed by Pacific Bank (of San Francisco), showing: That objector is mortgagee of Leila L. Foster, under mortgage upon two parcels of land in inventory described; that at dates of mortgage Leila L. Foster had acquired title of M. C. M. Love, the universal devisee, to the aforesaid lots of land, and, therefore, Foster is entitled to distribution. So objector, as such mortgagee, is interested in the estate.

There were also objections to the referee's report filed on behalf of the executor December 14, 1882. These objections by the executor were detailed and elaborate, but not necessary to be set out here.

It should also be noted, what does not appear in the report of the referee, or the opinion of the court, that the aggregate valuation of the estate (all realty, seven lots), as fixed by the official appraisement returned by the executor, was $86,000. The experts independently examined by the referee, and whose testimony was accepted by the court, were different persons from the appraisers previously appointed.

John M. Burnett, referee.

Geo. R. B. Hayes (Stanly, Stoney & Hayes), for Leila L. Foster.

Tobin & Tobin, for Hibernia Bank.

Winans, Belknap & Godoy, for Pacific Bank.

John S. Bugbee, with him Mr. T. B. Bishop, for executor Love.

COFFEY, J. This is a motion to confirm the report of the referee to whom the matter of the final account of the executor was referred, and to settle said account in accordance with said report, and for a decree distributing the property of said estate to the parties entitled thereto. The motion comes before this department on stipulation. The parties interested are the executor, John Lord Love; Leila L. Foster, who appears as the successor in interest by purchase

of Martha C. M. Love, the widow and residuary legatee and devisee of the decedent; the Pacific Bank and the Hibernia Savings and Loan Society, mortgagees.

On the hearing of the motion the executor appeared by John S. Bugbee, Esq., and T. B. Bishop, Esq., who opposed confirmation of the report of the referee; and Leila L. Foster, contestant, appeared by Geo. R. B. Hayes, Esq.

As to claim for extraordinary services: There is no error here. In my judgment the executor is entitled to no compensation for extraordinary services.

It is true he performed a duty advantageous to the estate, but he would have been grossly negligent if he had not used his ability in and knowledge of the law to have done so; and it appears a particular stress was laid by his mother upon the fact that he was a lawyer, and there was no necessity of going to extra expense of employing another to do the duty the executor was competent to perform. The principle and the policy which oppose the allowance of such a claim are too well settled to be now disturbed or assailed: Collier v. Munn, 41 N. Y. 143.

As to value of estate: I think the proof is that the value of the estate was no more than $49,000, according to evidence of Middleton and Magee; and I think the commissions of executor should be based upon this proof. As to valuation, there is no error.

As to fee in Clark v. Reese, it seems to me Harlow S. Love earned a right, dependent upon the result, to the portion allowed by the referee; and that when the executor was paid the one-half of the contingent fee, his associate, Campbell, paid it in recognition of the interest the decedent had in the case as attorney. The moral right of the estate to a portion of this fee is very clear; and the apportionment by the referee seems to be based upon a correct principle. If there is any doubt in my mind, it is that the estate has had less than its due awarded to it.

As to the delay in settling the estate, some indulgence may be extended to the executor, after examining his evidence. While ordinarily in such a case he might seem to be chargeable with great negligence, and an extreme lack of diligence

in closing the estate, the peculiar circumstances here induce me to view his apparent dilatoriness with charity; and I should not feel justified in imputing to him very great blame. Much of the delay was caused by the exaggerated notions of his mother as to the value of the property, and while a more methodical business man would not regard such considerations, we cannot entirely remove from our view the influence his mother had over him in protracting the settlement, in view of her interest in the estate.

As to the Bornheimer lot, I think the referee did not err in charging the executor with the sum of $825. Beyond that, I think the referee erred in charging the executor with the full value of the lot. I think the executor acted in good faith and used his best judgment in that case, and should not be held accountable for error in the exercise of that judgment, if it were an error.

The items aggregating $351.31 (page 7 of referee's report) were properly rejected, the claims not having been properly presented or allowed, except the items of $20 and under, Nos. 6, 20, 115, 117: Code Civ. Proc., sec. 1632.

As to commissions of executor: The right to commissions on the part of executor is absolute under the statute.

The strongest cases uphold this view where the compensation is fixed by law. In this respect the referee erred, and the executor is entitled to his commissions on the proved value of the estate, to wit, forty-nine thousand dollars ($49,000).

As to payments made to German Savings and Loan Society and the French Savings Bank: I think the referee erred in rejecting the claims for the payments to these accounts, because it appears the moneys obtained were devoted to the maintenance of the widow and her family, and with a view to the preservation, care and management and settlement of the estate; and it was done for and at the request of his mother, who was the universal devisee and legatee.

As to items rejected, No. 18 (for abstract in loan from German Bank), No. 37 (for abstract), and item No. 25 (paid Dalton for driving off squatters), the referee erred, as I think these items were proper charges against the estate. Items

Nos. 4, 26, 86, 118, 112 were properly rejected by the referee. Items Nos. 13, 66, 72 and 80 were also properly rejected, for the reasons set forth in the report of referee.

I think the referee erred in rejecting the percentage for redemption in the items Nos. 82, 83, 84, 85, as under the circumstances adverted to in the executor's testimony I do not feel at liberty to hold him culpable to this extent.

Item No. 92 was properly rejected.

As to $780 received for property taken for Buena Vista Park, the referee has not erred in his findings in that particular. The executor is properly chargeable with that sum, and I find nothing in the record which justifies a reversal of the referee's judgment as to that.

As to the estoppel claimed for the Hibernia Savings and Loan Society: I think the loan made by the bank was upon the faith of representations made to its attorney by the executor, which estop him from claiming commissions as against the bank. In this finding of the referee I see no error.

In all respects, except as herein modified, the report of the referee should be confirmed, and it is so ordered.

---

In Case an Executor or Administrator is Himself an Attorney, he cannot charge the estate with the expense of another attorney to assist him in conducting an ordinary administration, unattended with any legal or other complications. He is required to exercise his own professional skill, and this without extra compensation. Undoubtedly complications or litigation may arise which will entitle an administrator, though himself a lawyer, to the assistance of legal advice and counsel, but he cannot enlist such assistance, and have the cost thereof allowed in his account, in conducting ordinary probate proceedings: 1 Ross on Probate Law and Practice, 765.

An Executor or Administrator does not Necessarily Forfeit His Right to Compensation by dereliction of duty. In the event of the estate sustaining loss by his default or neglect, he should be charged with such loss in his account, and be allowed his commissions: Estate of Carver, 123 Cal. 102, 55 Pac. 770.

The Value of an Estate, for the Purpose of Calculating the Commissions of the executor or administrator, is determined prima facie by the appraisement contained in the inventory. The appraised value is not conclusive, however, and if it is questioned, the court

may institute an inquiry into the actual value: Estate of Carver, 123 Cal. 102, 55 Pac. 770; Estate of Fernandez, 119 Cal. 579, 51 Pac. 581; Noble v. Whitten, 38 Wash. 262, 80 Pac. 451; Estate of Mason, 26 Wash. 259, 66 Pac. 435; Estate of Smith, 18 Wash. 129, 51 Pac. 348; Wilbur v. Wilbur, 17 Wash. 683, 50 Pac. 589.