## IN THE MATTER OF THE GUARDIANSHIP OF REBECCA PANEE HUMEKU, a Spendthrift.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

### SUBMITTED DECEMBER 2, 1903.    DECIDED JANUARY 22, 1904.

### FREAR, C.J., GALBRAITH AND PERRY, JJ.

A guardian who is an attorney at law may, in a proper case, be allowed extra compensation for professional services rendered for the benefit of the ward.

Under the circumstances of this case, a fee of $1250 held excessive and $250 allowed as a reasonable fee.

#### OPINION OF THE COURT BY PERRY, J.

#### (Galbraith, J., Dissenting.)

This is an appeal by the ward, by her next friend, from an order of a Circuit Judge allowing J. A. Magoon, the guardian, the sum of $1250 as compensation for professional services rendered by him as attorney in resisting an application made by the ward for a termination of the guardianship. The allowance is sought to be set aside on the grounds, first, that Magoon's appearance was not on behalf of the ward but for his own benefit in order to secure a continuation of the relationship

of guardian and ward and the emoluments to himself arising
therefrom, and, second, that the sum allowed is excessive.

As we understand the argument for the ward, it is not con-
tended that extra compensation may not in any case be allowed
a guardian who is an attorney, for legal services rendered.
Elsewhere the decisions on the subject are not uniform.     In
this jurisdiction it has become the established practice to allow
such compensation in proper cases. See *In re Estate of Kalua
Kapukini,* 14 Haw. 204; *Magoon v. Brash et al.,* 11 Haw. 204,.
and also *In re Estate of Hiram Maikai,* 3 Haw. 522.   In the
case at bar, Magoon's appearance and his resistance of the ap-
plication were for the benefit of the ward; it was the guardian's.
duty, under the circumstances of the case, to appear and defend.
Upon the record we find no reason for holding that the resist-
ance offered was solely in the personal interest of Mr. Magoon.

Was the fee allowed excessive?   The application for termi-
nation of the guardianship seems to have been based upon two
grounds, (1) that the adjudication that the ward was a spend-
thrift should not have been made and (2) that the guardianship
was no longer necessary.   The answer was a denial of the essen-
tial averments of the petition and an assertion that the guar-
dianship was still necessary.   The Circuit Judge after trial
granted the application but on appeal his decree was reversed
and the application denied.   Evidence was taken before the
Circuit Judge on four separate days and on three or four other
days counsel appeared in court upon other details of the hear-
ing.   In this court, the proceedings consisted of a motion to
dismiss the appeal, which motion was argued and passed upon
within a few minutes, and on another day a submission of the
main case without oral argument.   The guardian's brief was
less than four pages in length.   The issues arising upon the ap-
plication were mainly of fact and of no great difficulty.   In
addition to these services, the guardian also appeared before a
Circuit Judge upon a motion of Mr. Fitch, counsel for the
ward, for an allowance of fees, the proceedings consisting of
an order, on one day, for a continuance, and, on another day,
a hearing and ruling upon the matter.   The main trial, it may

be added, must have involved some preparation in the examination of witnesses and otherwise, although there is no evidence in this case on the subject.

Circuit Judge Gear, who made the allowance of $1250 appealed from, heard no testimony as to the value of Mr. Magoon's services but evidently acted upon his own knowledge of the proceedings had and of the services rendered. It is stipulated, however, in this court, although the record does not show this and although the order appealed from recites that there was no dispute as to the value of the services, that certain evidence theretofore taken before Circuit Judge De Bolt bearing upon the question of the value of Mr. Fitch's services in presenting the application was by agreement considered as evidence on Mr. Magoon's application before Judge Gear. This latter evidence, and more particularly the expert testimony of Messrs. Stanley, Robertson and Hatch, members of the bar, is much relied upon by the appellee in support of the allowance made. The evidence of Messrs. Stanley and Robertson was, in brief, that the services of Mr. Fitch, as stated in the hypothetical question propounded, were reasonably worth from $1000 to $1500, and that of Mr. Hatch was that such services were worth from $1500 to $2000. Assuming that the evidence of these experts is properly before us, we do not regard it as entitled to much, if any, weight on this issue. In the first place, the witnesses testified concerning the services of Mr. Fitch and not concerning those of Mr. Magoon. One of the witnesses laid a great deal of stress upon the standing, experience and ability of counsel and the two others also considered that an element in measuring the compensation; and all three, if we may judge from their estimates of value, regarded Mr. Fitch's standing, experience and ability as of a very high order. Whether or not they would place Mr. Magoon in the same class in those respects, it is impossible for us to say without indulging in conjecture. The witnesses, secondly, based their estimates very largely upon the fact that the services rendered consisted of an attempt to rid the ward of the guardianship and to restore to her full control over her property. Mr. Magoon's services were in opposi-

tion to that attempt and his energies were directed to the up-
holding and continuance of the guardianship.    Then, again,.
the hypothetical question upon which the testimony was based,.
did not correctly state the facts material to be considered with
reference to Mr. Magoon's fee.    The questions assumed that, in
addition to the services in the Circuit and Supreme Courts,.
Mr. Fitch had for a period of fourteen months acted as the legal
adviser of the ward.    No such services are claimed to have been
rendered by Mr. Magoon.    The question also assumed that the·
ward's property was of the value of from $30000 to $40000, al--
though on cross-examination two of the witnesses testified with
reference to a property-value of $25000.    The evidence is that
the property did not exceed in value $22670 and was perhaps.
less.

In making the allowance appealed from, the Circuit Judge,
as appears from his written opinion, seems to have been largely
influenced by the fact that Mr. Fitch, who had been unsuccess-
ful in the attempt to have the guardianship terminated, had
been awarded a fee of $1250 and reasoned that opposing counsel
whose efforts had been successful should have at least as much.
In this connection it may be noted that at the hearing before
Judge De Bolt the ward consented to a fee of from $1000 to
$1500, that no evidence was adduced by the guardian as to the
value of Mr. Fitch's services, and that practically the only con-
test by the guardian was on the question whether any fee at
all should be allowed.    In any event, this court is not bound by
the standard of measurement adopted by the Circuit Judge.    It
may be added that no more can be allowed to Mr. Magoon than
the latter, as guardian, would have been, under all of the cir-
cumstances of the case, justified in paying if he had employed
other counsel; and in the latter event, acting, as he was, in a
fiduciary capacity, he would not have been at liberty to employ
counsel at fancy figures but it would have been his duty to bear
in mind always the ability of the ward's estate to pay, as well.
as the other circumstances, and to secure assistance at a cost·
that would be reasonable.

There is, then, before us no expert evidence entitled to weight·

on the subject of the value of Mr. Magoon's services. What-ever the rule may be in cases where there is such evidence, the court in this case is at liberty, and it is its duty, to give its own estimate of the value based upon the evidence as to the nature and extent of the services and the other circumstances generally. In our opinion, Mr. Magoon should be allowed, for his services in question, a fee of not exceeding two hundred and fifty dollars.

The order appealed from is reversed and the cause remanded to the Circuit Judge for such further proceedings, not incon-sistent with this opinion, as may be proper.

*E. M. Watson,* next friend, for the ward.

*J. A. Magoon,* guardian, in person.

### DISSENTING OPINION OF GALBRAITH, J.

The "established practice", in this jurisdiction, of allowing additional compensation to administrators and guardians, for legal services rendered by themselves, rests upon no stronger ground, it seems, than an occasional allowance of such claim.

The rule seems to have been adopted first in *In re Hiram Maikai,* 3 Haw. 522. The court in that case denied the claim but said, "The court would allow professional charges for ser-vices rendered to the estate in all cases where such services are necessary, and would allow them to the administrator if he should be a lawyer, whensoever they would allow them to an administrator who is not a lawyer," p. 525. No attempt was made by the court to justify the adoption of the rule by argu-ment or the citation of authorities of any kind. It seems to have been taken as a matter of course that such claims were proper allowances and should be made in some cases. The two subse-quent cases cited followed the earlier case as an authority with-out question.

These cases are not sufficient authority to warrant me in following a rule that is so clearly erroneous.

The practice of allowing fees, in addition to the statutory commissions, to members of the bar who may be guardians, or act in other trust capacities, for legal services is wrong in theory

and pernicious in practice.   It was never contemplated that the office of guardian should be one of great profit or that it should be sought on account of its emoluments.   The position of guardian is not thrust upon one against his will.   It is usually sought for.   Philanthropy and not avarice is supposed to be the motive that should prompt one to seek the place.

To permit Mr. Magoon, the guardian, to employ Mr. Magoon, the attorney, to represent the guardian in a law suit and allow him a fee of $1250 or any other amount from the estate, would place the guardian in a position where *his interest* might oppose *his duty*.

Such an allowance could not be sustained at common law nor will our statute permit it.   Section 1983 C.L., the only statute that gives any basis for the claim, reads as follows:   "Every guardian shall be allowed the amount of all his reasonable expenses incurred in the execution of his trust, and he shall also have such compensation for his services as the court in which his accounts are settled shall consider to be just and reasonable."

An examination of the accounts of the guardian shows that he has claimed and been allowed annually the commissions of 10% and 7% prescribed by Section 1493 C.L.   This I contend is the "compensation for his services" authorized by Section 1983 and was intended to be in full satisfaction and cannot authorize extra allowance for legal services rendered by the guardian in his capacity as an attorney-at-law.

The Supreme Court of Illinois in denying a claim of this character presents the question so clearly that I feel justified in quoting the opinion in full:

Caton, C.J., says, "The only question in this case is, whether an attorney of this court, who is an administrator, is entitled to an allowance against the estate, for professional services, in cases which he prosecutes or defends as such administrator. The authorities are uniform that this should not be allowed, and every principle of sound policy forbids it.   The law cannot permit the idea that a person can take the office of executor or administrator as a business or as a means of making money.   It must ever associate with that place, to a certain extent, the

idea of benevolence or philanthropy. We must ever assume that whoever takes such a position is actuated by an impulse of generosity and a desire to do good to others, rather than to make it a source of profit to himself. He must not be expected to suffer loss in the discharge of his duties, hence he must be allowed his necessary disbursements, and a reasonable compensation for the time and trouble bestowed upon the business of the estate. But beyond this the court should never go. If he chooses to exercise his professional skill as a lawyer in the business of the estate, that must be considered a gratuity. To allow him to become his own client and charge for professional services in his own name, although in a representative or trust capacity, would be holding out inducements for professional men to seek such representative places to increase their professional business, which would lead to most pernicious results. This is forbidden by every sound principle of professional morality as well as by the policy of the law." *Willard v. Bassett,* 27 Ill. 36.

For other cases of like import see *Hough v. Harvey,* 71 *Id.* 72; *Gray v. Robertson,* 175 *Id.* 242; *Collier v. Munn,* 41 N. Y. 143; *Doss v. Stevens,* 13 Colo. Appls. 535; *Kuhn's Appeal,* 4 Wash. 534; *Taylor v. Wright,* 93 Ind. 121.

The claim for attorney's fees by the guardian should be disallowed altogether.