(Surrogate's Court, Cattaraugus County. December, 1905.)

1. EXECUTORS AND ADMINISTRATORS—INVESTMENT OF FUNDS—LIABILITY FOR LOSS.

An executor, who invests funds of the estate in an unsecured promissory note, is chargeable with any resulting loss.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 422.]

2. SAME—RATE OF INTEREST.

An administrator, who improperly invests the funds of an estate in an unsecured promissory note which results in a loss of the investment, is chargeable with interest at only 3 per cent.

3. SAME—FAILURE TO COLLECT NOTE—NEGLIGENCE OF LEGATEE.

Where an administrator received, as part of the assets, a promissory note which he permitted to run after maturity, later transferring it to the guardian of the residuary legatee, which guardian on settlement turned the note over to the ward in whose hands it became barred by limitation without any offer to return the note to the administrator, he was not liable for the loss.

4. SAME—COMPENSATION.

An administrator cannot receive from the estate any greater compensation than the statutory commissions for his services, however meritorious or extraordinary they may be.

Judicial settlement of the estate of Henry Krisfeldt, deceased.

Nash & Bird, for administrator.

W. K. Harrison, for residuary legatees.

DAVIE, S. Henry Krisfeldt died October 16, 1890, leaving a will, which was admitted to probate by the Surrogate's Court of Cattaraugus county, December 4th of the same year; and letters of administration with the will annexed were thereupon issued to the petitioner. By the terms of the will, testator gave to his widow the use of all his estate, both real and personal, during life; at her death, he bequeathed the sum of $200 to a daughter and the balance of his estate to his three grandchildren, all of whom were minors at the time of his decease, providing that distribution thereof should be made between such legatees when the youngest of them became 21 years of age. The widow died in the month of July, 1898; on the 10th day of July, 1899,

a decree was made, upon an intermediate accounting, determining the amount of the personal estate then remaining in the hands of the administrator to be the sum of $2,399.29. The residuary legatees are now of full age, and the administrator presents his accounts for final judicial settlement, and various objections are filed thereto. One of such objections relates to the rent from real estate collected by the administrator since the death of the widow. It appears from the evidence that the administrator received one year's rent for the house and lot, amounting to $33, which is not accounted for. Five dollars of the same was paid to the general guardian of the residuary legatees; the balance, $28, must now be charged to the administrator.

The administrator credits himself, in his final account, with the sum of $100 for services in caring for the real estate of the testator. This item is objected to and cannot be allowed. The compensation of the administrator is limited to his legal commissions; he is not entitled to charge any sum whatever, in excess of his commissions, for services rendered in the management of the estate. The compensation of executors, administrators, and trustees is statutory; and no greater sum than that allowed by statute can be charged, even where the representative renders services beyond his strict duties, however necessary such services, or reasonable his price. It is a well-settled rule that he cannot receive from the estate any greater compensation than the statutory commissions for his services, however meritorious or extraordinary they may be. Morgan v. Hannas, 13 Abb. Prac. (N. S.) 361; Collier v. Munn, 41 N. Y. 143; Redf. Sur. (3d Ed.) 720, 721.

The more important questions arising upon this accounting relate to the two Butterfield notes, with which the administrator seeks to credit himself as loss upon inventory. The facts relating to this controversy are as follows: On the 19th day of March, 1890, the decedent loaned to one Butterfield the sum of $100, taking his note therefor, due in one year from date with interest. This note came into the possession of the administrator with the other assets of the estate. He permitted it to run after its maturity. No security was given for its payment. The interest was paid, year after year, the last of such payments having been made March 19, 1898. On the 23d day of October, 1897, the administrator loaned to Butterfield the further sum of $300 of the funds belonging to the estate, taking his note therefore payable to the order of the administrator, personally, in one year from date. The interest was paid upon this note October 27, 1898. Some time in June, 1899, Butterfield incumbered all his personal property by chattel mortgage, and thereafter was insolvent. Neither of such notes has been paid, nor are they collectible. Up to about the time of Butterfield's failure, he was reputed and understood to be responsible. On the 19th day of June, 1900, the administrator transferred to the general guardian of the residuary legatees, they still being minors, certain securities belonging to the estate, and, at the same time, paid to the guardian a sum of money sufficient, as the administrator then claimed, to satisfy the full demands of the residuary legatees against the estate. The guardian thereupon delivered to the administrator a receipt for the amount so paid over, including such securities and money, and purporting to be a receipt in full, and consenting that a decree might be

entered by the surrogate discharging the administrator from all further liability. Among the securities so turned over was the $100 note, but not the $300 one. The guardian retained the note which he had thus received until his wards arrived at the age of 21, and then made a voluntary settlement with each of them, presumably delivering to them this note. It does not appear that either the guardian or the residuary legatees have at any time offered to return this note to the administrator. The statute of limitations has now run against it, although such was not the case at the time of filing the account herein.

In view of the fact that this loan was originally made by the decedent, that the only neglect on the part of the administrator consisted in permitting the note to run after its maturity, that the maker was supposed to be responsible down to the time of his failure, and that the residuary legatees have had the possession and control of the note since they became of age, permitting the same, in the meantime, to outlaw without offering to return the same, the administrator should not now be charged with this loss.

In regard to the $300 note, if it was not such a security or such an investment of the trust funds as the administrator was authorized to make, he is personally chargeable with the loss. Then the question is: Was the administrator authorized to make this loan of the trust funds to Butterfield upon his unsecured promissory note? This question has been distinctly answered in the negative. Estate of Cant, 3 N. Y. St. Rep. 230; Holmes v. Dring, 2 Cox. 1; Bogart v. Van Velsor, 4 Edw. Ch. 719; Lefever v. Hasbrouck, 2 Dem. Sur. 567; Mills v. Hoffman, 26 Hun, 594; Judd v. Warner, 2 Dem. Sur. 104.

Counsel for the administrator cites King v. Talbot, 40 N. Y. 90, as an authority exonerating the administrator from liability for making this loan. A careful analysis of that case, however, does not sustain that contention. In that case, Woodruff, J., after stating that in England the rule has long been settled that a trustee, holding funds for investment for the benefit of his cestui que trust, is bound to make such investment in the public debt, for the safety whereof the faith of the government is pledged, or in loans for which real estate is pledged as security, proceeds to say that, as a peculiarly arbitrary rule, resting upon the special policy of that country, it has no application in this country, and continues:

"My own judgment, after an examination of the subject, and bearing in mind the nature of the office, its importance, and the considerations, which alone induce men of suitable experience, capacity, and responsibility to accept its usually thankless burden, is that the just and true rule is that the trustee is bound to employ such diligence and prudence in the care and management as in general prudent men of discretion and intelligence in such matters employ in their own affairs."

In explaining and applying the rule thus enunciated, he further says that it "assumes and insists, that the trustees shall not place the fund where its safety and due return to their hands will depend upon the success of the business in which it is adventured, or the skill and honesty of other parties intrusted with its conduct; and it is in the selection of the securities for its safety and actual return that there is a scope for discretion and prudence, which, if exercised in good faith, consti-

tute due performance of the duty of the trustees." While all the judges concurred in the result reached in this case, Murray, J., says:

"It is a settled principle of law in this state that a trustee, holding trust funds for investment for the benefit of minor children, must invest in government or real estate securities, and that any other investment would be a breach of duty, and the trustee would be personally liable for any loss."

In this view Grover, Daniels, and James, JJ., concurred; Hunt, C. J., Mason, and Lott, JJ., contra. See, also, Adair v. Brimmer, 74 N. Y. 551; Ormiston v. Olcott, 84 N. Y. 343.

While the amount involved in this controversy is not large, the principle is an important one, and should be definitely settled. All uncertainty as to the legal rule should be eliminated, in order that trustees may clearly understand their duties and obligations. From a careful consideration of the authorities bearing upon this question, I desire to distinctly and unequivocally assert the rule to be that trustees, executors, administrators, and guardians are not authorized to invest trust funds upon unsecured promissory notes, nor in any other manner where the only security for their safekeeping and proper return depends entirely upon individual or personal responsibility, which today may be ample and tomorrow worthless. If loss arises from investments of this character, such loss is that of the representative personally, and not of the estate. Applying this rule to the case under consideration, it follows that the administrator must be personally charged with the loss upon the $300 note, and with interest on the same from October 27, 1898, that being the date of the last payment of interest thereon by Butterfield; but, in view of the fact that trustees experience considerable difficulty, under existing conditions, in keeping trust funds constantly invested, so as to produce the highest rate of interest, I am of the opinion that the administrator in this case should only be charged with interest from the date named at the rate of 3 per cent.

A decree will, accordingly, be entered in accordance with the foregoing conclusions.

Decreed accordingly.