## In re McKENNA.

### (District Court, N. D. New York. May 16, 1905.)

1. BANKRUPTCY—TRUSTEES—APPOINTMENT—LEGACIES.

Where a bankrupt became the owner of a legacy by the death of his testator prior to the filing of his petition and adjudication, but on the same day, such legacy vested in the bankrupt's trustee for administration in bankruptcy.

2. SAME—LEGAL SERVICES—TRUSTEE AN ATTORNEY.

A trustee of a bankrupt, though an attorney, is not bound to perform legal services, but if he does so he cannot have compensation therefor from the estate.

3. SAME—EMPLOYMENT OF COUNSEL.

Where a bankrupt was left a large legacy on the same day he was adjudged a bankrupt, and claimed that he, and not his trustee, was entitled to receive the same, his trustee was justified in employing an attorney to represent him in litigation involving a contest of the will, and also a contested accounting as the administrator with the will annexed, though the bankrupt was also represented by counsel in such proceedings.

4. SAME—ACTS OF ATTORNEYS.

It was not improper for attorneys of a bankrupt's trustee to make out and present formal proof of the claim of a creditor, where nothing appeared to indicate that such attorneys did anything for the creditor that would in any way prejudice the interests of the bankrupt or his estate.

5. SAME—ATTORNEYS' SERVICES.

Where, on the same day a person was adjudged a bankrupt, he became vested with a legacy of $25,000, and his trustee properly employed attorneys to recover such legacy, who, in connection with an attorney employed by the bankrupt, assisted in successfully defending a will contest, and recovering so much of the legacy as was sufficient to pay the claims against the estate of the bankrupt, etc., after having been engaged for a period of fifty days, an order allowing such attorneys $800 for their services was proper.

Review of decision of referee in bankruptcy making an allowance to the attorney for the trustee on objection by the bankrupt.

Lewis E. Griffith, for the bankrupt.

Peck & Behan, for the trustee.

RAY, District Judge. The facts in this case are somewhat peculiar. Isaac Bradt died at the city of Albany, N. Y., on the 29th day of December, 1902, at 8 o'clock and 45 minutes a. m., leaving a last will and testament, in and by which he left a general legacy of $25,000 to said Edward J. McKenna, of the city of Troy, N. Y. Said Edward J. McKenna, said legatee, filed a voluntary petition in bankruptcy in the Northern District of New York on the same day, December 29, 1902, at 10 o'clock in the forenoon, and on the same day, at 2:30 o'clock p. m., he was duly adjudicated a bankrupt. His petition and schedules were verified December 27, 1902; and the circumstances, sickness of Bradt, very frequent visits of McKenna to him, etc., are such that it is not unreasonable to think that McKenna knew he was a legatee in the will, and was seeking to obtain a discharge in bankruptcy prior to coming into such legacy, that he might enjoy it without impairment. How-

ever this may be, at the first meeting of creditors Andrew P. McKean was duly chosen and appointed trustee of the estate of such bankrupt, and he still is such trustee. Said trustee was an attorney and counselor of the Supreme Court, in good standing, learned in the law, and capable of taking care of all legal matters in which the trustee might be interested. A contest was entered against the will, and this fact, with others, demanded the services of a gentleman learned in the law—such services as would justify a nonprofessional man, trustee in bankruptcy, in employing an attorney. The trustee in this matter, instead of undertaking to do this work himself, or seeking to have himself individually appointed attorney for himself as trustee, as has been improperly done in many instances, employed the firm of Peck & Behan to act as his attorneys, and they have so acted since that time. Preparations were made for the contest over the will, but such contest was finally abandoned. The executor named in the will having died, an administrator with the will annexed was then appointed. The estate was so administered that finally, after a contested accounting, the legacy to the voluntary bankrupt, Edward J. McKenna, netted about $20,000. The trustee in bankruptcy intervened, as he had the right and as was his duty, for he then represented the creditors of McKenna, and demanded the legacy for purposes of administration in the bankruptcy court. There is no question that, on the appointment of Andrew P. McKean as trustee, the title to the legacy vested in him as such, and he was entitled to receive it. The surrogate of the county of Albany, after a contest made by the said bankrupt, so held. The debts of the bankrupt, as proved and established, amounted to about $2,500 only, and the trustee consented that all but $3,500 of such legacy be paid to said bankrupt. This was done. From the $3,500 paid to the trustee, he has paid all expenses of administration of the estate, and all debts of the bankrupt existing at the time he filed his petition. Said Peck & Behan have continued to act as attorneys for the trustee in all the matters of the estate.

At the final meeting of the creditors of the said Edward J. McKenna on the 12th day of January, 1905, the said attorneys of the trustee moved for an allowance of $1,200 as compensation for their services to and for said trustee, from the estate of the bankrupt in the hands of said trustee. This allowance was contested and opposed by the bankrupt. The grounds of such objections are that said trustee required no attorney—was fully competent and able, and it was his duty, to act as his own attorney; that said Peck & Behan acted as attorneys for several persons who had claims against the bankrupt estate, and should not, for that reason, be allowed compensation from the estate for services rendered the trustee; and finally that the $1,200 demanded was excessive, exorbitant, oppressive, and extravagant. Affidavits as to the amount and value of the services rendered the trustee were submitted on both sides. The affidavit of Mr. Behan states that he, as attorney for the trustee, expended $16.25 in necessary disbursements, and 50 days' labor and time. The opposing affidavits speak more particularly of the

services before the surrogate on the will contest, and somewhat as to the accounting. The bankrupt had Mr. Griffith in his employ all the time, and, inasmuch as the legacy was largely in excess of any sum required to pay all the debts of the bankrupt and all the expenses and commissions, it was at least proper for the trustee to permit this. At least, it would have been exceedingly ungracious, had the attorney for the trustee objected to Mr. Griffith, as attorney for the bankrupt, taking the leading part all through. It is well known that in all well-conducted trials but one counsel on a side is permitted to examine witnesses or argue questions. In this case it would have been highly improper, in view of the attitude of the bankrupt, for the trustee to have intrusted his interests as trustee to the counsel for the bankrupt. It was his duty to look out for and protect the interests of the creditors, and in view of the fact that the bankrupt, with upwards of $20,000, which came to and vested in him the same day he filed his petition in bankruptcy, and before he was adjudicated a bankrupt, took the position that the creditors were entitled to no part of it, and that under the bankrupt act he was entitled to a discharge from all his debts, while retaining the whole legacy, the trustee would have been culpably remiss in the discharge of his duty, had he not employed counsel, and good counsel, in the matter, and it was his duty to have such counsel present at all the hearings before the surrogate and in both proceedings.

It is well settled that a person, being a trustee, cannot perform legal services for himself as trustee, and have compensation therefor from the estate he represents. Nor is he under obligation to perform such legal services because he is the trustee. In many cases the compensation permitted by the bankruptcy act to a trustee in bankruptcy would not pay 10 per cent. of the value of the purely legal services rendered in addition to those legitimately performed by the trustee in the discharge of the usual duties of that office. However, when a trustee performs legal services, he cannot have additional compensation therefor.

This general subject is considered in 1 Perry on Trusts (2d Ed.) § 432, where it is stated:

"The rule that trustees can make no profit out of the estate is carried so far in England that they can receive no compensation for their services. In the United States trustees are entitled to reasonable compensation. But both in England and the United States a trustee can receive no indirect profit from the estate by reason of his connection with it. Thus a trustee cannot be appointed receiver with a salary, nor would he be appointed without compensation, except under peculiar circumstances, for it is his duty to superintend and watch over the receiver. The same reasons do not apply for excluding a dry trustee. If trustees are factors or brokers or commission agents or auctioneers or bankers or attorneys or solicitors, they can make no charges against the trust estate for services rendered by them in their professional capacity to the estate of which they are trustees. They may employ the services of such agents, if necessary, and pay for them from the estate; but, if they undertake to act in such capacities themselves for the estate, they can receive no compensation. This rule is so strict, that if the trustee has a partner, and employs such partner, no charge can be made by the firm; but, if the trustee is excluded from all participation in the compensation, the partner of the trustee may be paid like any other person for similar services. In one case where several trustees were made defendants,

one of them, being a solicitor, conducted the defense, and was allowed his full costs; it not appearing that the costs were increased by such conduct. This case is put upon the ground that the services were rendered under the eye of the court, and there could be no danger of collusion; but the case is not approved in England, and has not been followed. In the United States a trustee has been refused compensation as solicitor for professional services rendered by himself for himself as trustee, on the ground that no man can make a contract with himself."

This doctrine is sustained by the many decisions cited in that work.

In Collier, as Executor, v. Munn et al., 41 N. Y. 143, it was held, after due deliberation and consideration, that an executor cannot receive from the estate any greater compensation than the statute commissions for his own services, however meritorious or extraordinary they may be. And it was held in that case that one of the executors of a will, and who was an attorney and counselor at law, could not be allowed any fees whatever from the estate for professionally defending and conducting an action brought against the estate, although requested by his coexecutors to appear and defend, with a promise of compensation, and although the legatees and next of kin also united in such request. The opinion in that case refers to a decision of Chancellor Kent (Green v. Winter, 1 Johns. Ch. 26; 7 Am. Dec. 475), where it was held that a trustee is not entitled even to commissions on his sales or receipts, or payments, or any compensation for his care or pains in the execution of his trust, but only to an allowance per diem for his services and expenses of travel. He rejected a charge by way of retainer for his counsel.

In Parker v. Day, 155 N. Y. 383, 49 N. E. 1046, it was held:

"Executor an Attorney at Law—Services of Copartner. Although an executor who is an attorney at law cannot have compensation for professional services rendered by him to the estate, and if, having a partner, he employs his partner in business of the estate, no charge can be made by the firm, yet, if the executor is excluded from all participation in the compensation, his partner may be paid like any other person for similar services, and the executor may, as an individual, employ his partner, as an individual, to do work for him in matters of the estate, outside and independent of the copartnership, and become personally liable therefor.

"Employment of Attorney by His Copartner—Action for Services. The fact that the parties were copartners at the time of the employment is not conclusive, as matter of law, against the right of an attorney to recover in an action brought by him individually against an executor individually for services in matters of the estate, claimed to have been rendered on the employment of the defendant, outside and independent of the partnership."

The court in its opinion cites section 432 of Perry on Trusts with approval.

The court holds in this case that it was the duty of the trustee in bankruptcy to employ counsel, and that he had the right so to do; that it was not the duty of the trustee in bankruptcy to perform these legal services; that, the legal services rendered and the employment of the attorneys having been necessary for the proper protection and preservation of the estate, the referee was justified in fixing the sum that should be paid to the attorneys from the estate as compensation for such services. This court is aware of

the rule which has been adopted in some of the state courts that no allowance will be made for legal services until the executor or administrator or other trustee has first paid therefor; that then he may present the bill in his account, and ask reimbursement. This rule always leaves the trustee, executor, or administrator open to have the propriety of his allowance and payment questioned by those interested in the fund. If the court decides that he has paid too much, he must stand the loss, for he has undertaken to decide that matter for himself, and, having conceded the justice of the claim of the attorneys—their claim being a personal one against him—he is without remedy. Without questioning the wisdom or propriety or justice of such a rule in the cases where it has been applied by the state courts, this court is decidedly of the opinion that it ought not to prevail in the bankruptcy court. Here there are meetings of the creditors, where all parties in interest may come before the court. The attorneys who have rendered services for the trustee or for the receiver in bankruptcy may come before the court or referee, as the case may be, and present their claim. If no objection is made by any party, and the court or referee in bankruptcy deems the bill reasonable for the services rendered, it may be allowed, and payment directed from the estate. It is entirely immaterial to those in interest whether the compensation going to attorneys for the trustee be first paid by the trustee personally, from his own funds, or by the trustee, under an order of the court, direct to the parties entitled thereto, from the estate, provided it is allowed by the court after a fair hearing. The practice adopted in this case relieved the trustee from the imputation of having undertaken to decide as to the compensation his attorneys ought to receive from the estate. The course pursued left it entirely to the court or referee in bankruptcy to determine the necessity and the value of the services rendered. This practice has been many times approved in the bankruptcy court, and is approved by this court. In the opinion of this court, neither a trustee nor a receiver in bankruptcy ought to be permitted to pay money of the estate to his attorneys or counsel without the order or authority of the court, and certainly such officers ought not to be required to pay for such services from their own funds. It is always, however, within the power of a receiver or trustee to pay the attorney from his own funds, and then ask reimbursement from the estate by order of the court.

In fixing the value of legal services, courts have many things to consider—the nature and importance of the business transacted; the ability of the parties to pay; the amount of the estate involved; the magnitude of the interests in question; the standing and ability of the attorneys employed; the location of the parties and of the attorneys. These and many other things are proper subjects of consideration. In the case now under consideration it is not disputed that Peck & Behan did 50 days' work as attorneys for the trustee. They reside in the city of Troy. The referee in bankruptcy making the allowance resides in that city, and he knew of the performance of a large part, at least, of these services. He

knows the value of such services in that vicinity. It does not appear that there was any contest or controversy over the claims allowed and paid, represented by Peck & Behan. So far as appears, the presentation of these claims by that firm was a mere formality, except in the making of the proof. This court does not approve of the practice which allows attorneys representing a receiver or trustee to also represent creditors, where there is any contest or contention over the claims of creditors. There is no objection, however, to permitting the attorney for a trustee to make out and present the formal proof of claim of a creditor. Nothing appears in this case to indicate that the attorneys for the trustee did anything for the creditors that would in any way prejudice the interests of the bankrupt or of the bankrupt estate. In view of the interests involved, the size of the estate of the bankrupt, the position taken by the bankrupt with reference to the creditors and the payment of their claims, and the location of the parties in the cities of Albany and Troy, where all the proceedings were had, this court is of the opinion that the allowance of $800 was not improper or excessive. The order of the referee under review, allowing the sum of $800 to Peck & Behan as attorneys for the trustee, is therefore affirmed.