## In re FELSON.

(District Court, N. D. New York. July 17, 1905.)

1. BANKRUPTCY — PROCEEDINGS BY CREDITORS—EXPENSES—STATUTES—APPLICATION.

Bankr. Act July 1, 1898, c. 541, § 64, subd. "b," 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], as amended by Act Feb. 5, 1903, c. 487, § 14, 32 Stat. 800 [U. S. Comp. St. Supp. 1903; p. 417], providing that where property of a bankrupt, concealed by him either before or after the filing of the petition, shall be recovered for the benefit of the estate by the efforts and at the expense of one or more creditors, the reasonable expense of such recovery may be allowed to them, has no application to bankruptcy proceedings instituted prior to the date of its enactment.

2. SAME—ATTORNEY'S FEES.

Where a bankrupt's trustee was represented by able counsel, and immediately instituted a proceeding to recover concealed property, which he vigorously prosecuted, even to having the bankrupt committed for contempt and indicted, when he turned over to his trustee $3,400 of the $6,000 found to have been concealed, attorneys employed by creditors to assist in such proceedings were not entitled to fees out of the bankrupt's estate.

3. SAME—ATTORNEY FOR BANKRUPT.

Where an involuntary bankrupt's attorney prepared the schedules and attended the examination of the bankrupt, but thereafter represented the bankrupt in proceedings wherein the court found that he had knowingly and fraudulently concealed, while a bankrupt, from his trustee, some $6,000, such attorney was entitled to $50 for preparing the schedules and attending the examination, but was not entitled to anything for his subsequent services.

4. SAME—TRUSTEE.

Though a trustee in bankruptcy, who is an attorney, is not bound to perform legal services for the estate represented by him, yet if he does so he is not entitled to recover attorney's fees therefor.

This matter comes before the court on petition for review of the order of the referee in bankruptcy making allowances from the estate to the trustee and to the attorney for the trustee, and to attorneys for certain creditors of the bankrupt, and which order was made at the final meeting of creditors, and on the settlement of the accounts of the trustee in bankruptcy, May 20, 1905.

See 124 Fed. 288.

H. Walter Lee and Hastings & Gleason, for trustee.

A. W. Orvis, for bankrupt.

Jas. F. Akin, John M. Barr, J. C. Dolan, R. E. McLear, E. H. Neary, C. A. Hitchcock, and H. C. Quinby, each for certain creditors.

RAY, District Judge. This was an involuntary proceeding, but adjudication was made without contest, and the matter referred to a referee. At the very beginning of the proceeding, H. Walter Lee, subsequently chosen trustee, was appointed receiver. He was an attorney at law of the Supreme Court of the state of New York, and also admitted to practice in the District Court of the United States. Frederick H. Hazard was the attorney for the petitioning creditors, and filed the petition, procured the appointment of the

receiver and his qualification, etc. It seems from the affidavits that said trustee employed Hastings & Gleason, of New York City, as his attorneys. They resided at least 200 miles away from the trustee and bankrupt's place of business. The claims against the bankrupt amounted to about $29,000, but only about $24,000 were proved and allowed. The estate of the bankrupt surrendered consisted of goods in a jeweler's store—a cheap miscellaneous lot— a small interest in some real estate in New Jersey, a right of action to recover preferences, and an alleged equity in real estate in New York City. The stock of goods sold for $1,689; the New Jersey real estate, for $50. There was recovered from preference payments $591.87, and collected on debts for repairs $9.75, and from G. A. R. $3. The claim was made, and, on investigation and examination into the facts, it was determined by the referee, on due hearing, that the bankrupt had knowingly and fraudulently concealed from his trustee in bankruptcy, while a bankrupt, and was concealing, over $6,000 in value of assets. This court set that order aside for certain reasons, and in further proceedings the referee found the value of the property so withheld and concealed to be over $7,000. This court, on review of the proceedings, reduced the amount to $6,000, and the bankrupt was directed to pay over that amount in cash, or surrender the property. He did not obey the order, and contempt proceedings were instituted; and after a time the bankrupt was not only adjudged in contempt, but was indicted for the offense mentioned. Before the criminal trial, Felson was permitted to purge himself of the contempt by paying to the trustee the sum of $3,400. This brought the estate of the bankrupt realized to the sum of $5,743.62. The total expenditures of the trustee up to the time he filed his report were $1,087.26; leaving a balance of $4,656.36 for creditors, subject to the payment of legitimate expenses in the administration of the estate. Of the $1,087.26 paid out, $100 was for rent; $31.50 for insurance; $96 for appraisers of the stock in the store; $86.22 for appraisers in New Jersey to make appraisal of the real estate that sold for $50; $381.03, disbursements allowed by the court to Hastings & Gleason as attorneys for trustee; $63.20, disbursements allowed to J. C. Dolan, attorney for certain creditors; $40 to the referee for stenographer's fees; $63.55, disbursements of the trustee; $37.50 to surety company for bond of trustee; $125 to the referee, his fees, etc.; the balance for smaller necessary expenses. This court is greatly aided by the fact that it twice reviewed the proceedings to charge the bankrupt with having concealed property, heard motions to vacate the order and relieve from the contempt, and finally, in June, at the same term when this appeal was heard, the bankrupt was tried on the above-mentioned indictment. The evidence taken in the proceedings to charge the bankrupt with having concealed the property has been and is before the court.

From the stenographer's minutes of March 14, 1903, it appears that the bankrupt appeared in person and by A. W. Orvis and Mr. Rosenthal, his attorneys, that Hastings & Gleason appeared for the

petitioning creditors and the trustee, the trustee in person, and Messrs. Neary, Dolan, Johnson, and Henry C. Quinby each for certain creditors. The stenographer's minutes of the hearing commencing April 18, 1903, show A. W. Orvis and Mr. Rosenthal appearing for the bankrupt, Felson; Hastings & Gleason, for petitioning creditors and creditors; H. Walter Lee, trustee, in person; H. C. Quinby, E. H. Neary, and J. C. Dolan, each for creditors. Such minutes for a hearing commencing May 29, 1903, show appearances as follows: A. W. Orvis and Mr. Rosenthal, for the bankrupt. Hastings & Gleason, for New York Jewellers' Association; H. Walter Lee, trustee, in person; H. C. Quinby, J. C. Dolan, E. H. Neary, each for certain creditors. At all these times the bankrupt was knowingly, fraudulently, and persistently concealing his property from his trustee. It was the duty of the trustee, representing all the creditors, to employ all necessary counsel, and vigorously prosecute inquiries as to the property of the estate, and take all necessary measures for the recovery of this property, or its value in money. The matter was in his hands. Creditors could appear in the proceedings personally or by counsel, if they saw fit, and aid in the inquiry and investigation, but at their own expense, not at the expense of the estate. But if the trustee should not prosecute such an inquiry and employ necessary counsel, one or more creditors may, and if property transferred or concealed by the bankrupt is, under such circumstances, "recovered for the benefit of the estate of the bankrupt by the efforts and at the expense of one or more creditors," then "the reasonable expenses of such recovery" are to be allowed and paid, and such reasonable expenses are to be regarded as a debt having priority. Section 64, subd. "b," of "An act to establish a uniform system of bankruptcy throughout the United States," approved July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], as amended by the act of Congress approved February 5, 1903, c. 487, § 14, 32 Stat. 800 [U. S. Comp. St. Supp. 1903, p. 417]. Prior to the amendment of February 5, 1903, there was no provision of this kind, or applicable to such a case. This amendment has no application to bankruptcy proceedings instituted prior to February 5, 1903. See Collier on Bankruptcy (5th Ed.) p. 501, where it is said, speaking of this amendment, "The amendment is available only in bankruptcy proceedings begun after February 5, 1903." The amendment has no application to the case now under consideration, as the proceeding was instituted in December, 1902, and the trustee was appointed as early as January 28, 1903. In re Docker Foster Co., 10 Am. Bankr. Rep. 584, 123 Fed. 190; Collier (5th Ed.) p. 586. Indeed, the amendatory act expressly declares "that the provisions of this amendatory act shall not apply to bankruptcy cases pending when this act takes effect, but such cases shall be adjudicated and disposed of conformably to the provisions of the said act of July 1, 1898." In Re Little River Lumber Co., 3 Am. Bankr. Rep. 682, the court held that where a trustee did not act, and a creditor did, and incurred expense, and so aided or benefited the estate, the court had power to compensate such creditor by mak-

ing an allowance out of the estate. In Re Lesser Brothers, 3 Am. Bankr. Rep. 815, 100 Fed. 433, certain creditors had obtained, at great expense, a lien which inured to the benefit of all the creditors by reason of the provisions of the bankruptcy act, which at the same time prevented the creditors who had obtained the lien from having the exclusive benefit thereof. Held, they might have compensation out of the fund. See opinion of Shipman, J., in same case on appeal, 5 Am. Bankr. Rep. 320, 321, 108 Fed. 201. In the case now under consideration there is no evidence that the trustee failed in his duty, or failed to press the matter of intentional and fraudulent concealment against Felson with promptness and vigor. Of the proceedings in this court of which it has knowledge, and which were taken in this very bankruptcy proceeding, it will take judicial notice. It will not do, even under the provisions of subdivision "b" of section 64, as amended, to permit creditors generally to come with their attorneys to the aid of the trustee seeking to recover property belonging to the estate in bankruptcy of the bankrupt, and concealed by him in violation of section 29 of the act (Act July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433]), and have an allowance for their expenses or attorney's charges out of the estate. The amendment gives no such license as this, and clearly such a course was not permissible prior to the amendment. See In re Smith, 5 Am. Bankr. Rep. 559, 108 Fed. 39; In re Silverman, 3 Am. Bankr. Rep. 227, 97 Fed. 325. If one comes, why not all, and if several come, and the referee makes an allowance to one, why not to all?

With an estate of $4,656.36 for distribution, the referee, at the final meeting of creditors, by his order of May 20, 1905, made the following allowances: To Hastings & Gleason, as attorneys for the trustee, disbursements, $164.88; services, $900; total, $1,064.88. To F. H. Hazard, as attorney for petitioning creditors, disbursements, $35.94; services, $50; total, $85.94. To A. W. Orvis, as attorney for the bankrupt, disbursements, $109.32; services, $600; total, $709.32. To J. C. Dolan, as attorney for certain creditors, disbursements, $16.50; services, $650; total, $666.50. To C. A. Hitchcock, as attorney for a certain creditor, disbursements, $28.08; services, $50; total, $78.08. To E. H. Neary, as attorney for certain creditors, disbursements, $30.78; services, $50; total, $80.78. To H. C. Quinby, as attorney for certain creditors, disbursements, $338.09; services, $150; total, $488.09. To Conger & McLear, as attorneys for certain creditors, disbursements, $9.80; services, $50; total, $59.80. J. F. Akin, attorney for certain creditors, services, $75. To the jewelers' association, not a creditor, but an association having a deep interest in ferreting out and exposing and punishing such transactions, disbursements, $138.80; and to H. Walter Lee, such trustee, for his services as receiver, $150, as allowed by the judge who appointed him, and $184.10, disbursements; and further says the order:

"It appearing to the satisfaction of the referee that the trustee has rendered services to the estate over and above the usual and ordinary responsibility of his trust, and that he is entitled to a compensation therefor, and that the

sum of $250 is a reasonable compensation therefor, it is ordered that the trustee do, out of the funds in his hands to the credit of this proceeding, retain to his own use the sum of $584.10; being the amount of his said allowance as receiver, his said allowance as trustee, and his said disbursements as receiver and trustee. It is further ordered that the trustee is entitled to the sum of $154.87 commissions as trustee upon the moneys disbursed and to be disbursed by him, and that he do, therefore, out of the moneys in his hands, retain to his own use the said sum of $184.57."

As a justification for the allowances to the attorneys for the general creditors, the referee says:

"It appearing to the satisfaction of the referee that the services of Mr. Hazard, Mr. Akin, Messrs. McLear & Conger, Mr. Dolan, Mr. Quinby, and Mr. Neary have been beneficial to the estate to the extent of the allowances hereinbefore made to them, it is," etc.

These allowances, aggregating $4,356.36, made by the referee in the final decree for the distribution of the estate, reduce the amount for distribution to creditors from $4,656.36 to the sum of $300, in round numbers—a trifle over 1 per cent. of the proved and allowed claims.

This order and decree for the distribution of this estate in bankruptcy and making these allowances must be modified. As already stated, allowances to general creditors, one or more, who employ and pay counsel and incur and pay other expenses in doing things to benefit and increase the estate, and which have that effect, cannot be made unless the trustee has not been appointed at the time it is done, or, having been appointed, he has neglected or refused to act in the matter. Even in such case, unless there be an emergency demanding immediate action, the order and direction of the court should be first sought. In this case the trustee had an abundance of able counsel. There was nothing complex or very difficult in the case. The situation demanded considerable faithful, plodding work. No difficult questions of law were involved. Mr. Quinby says that he represented the jewelers' association and board of trade, and certain clients of theirs, who were creditors of the bankrupt, Felson. His statement is frank and in all respects truthful. It is not doubted, and cannot be doubted, that he expended money (representing these associations) and performed services of value to the estate and all the creditors, but he was not employed by the trustee. And as stated, the trustee was not neglecting his duty. Mr. Quinby testifies that he, representing these associations, employed J. C. Dolan in the matters in question, and paid his bill, $80.45, and that he in the same behalf employed James F. Akin, and paid his bills, $159.14. As these gentlemen represented other creditors in the litigation and proceeding, they must look to them for their compensation for such services. Mr. C. A. Hitchcock and Conger & McLear represented creditors, but were not employed by the trustee. Mr. E. H. Neary says that he represented certain creditors, and also R. G. Dun & Co., and had had frequent interviews with the bankrupt, Felson, for months before the bankruptcy, and that he attended all the hearings, and thinks his knowledge and attendance was valuable to the estate. Probably this is true, but he was not employed by the trustee. F. H. Hazard was the

attorney for the petitioning creditors, and plainly, under the law, he is entitled to a fair allowance for services, and to his reasonable disbursements. See subdivision "b," § 64, Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]. The debts to have priority and the order of payment shall be "(3) the cost of administration, * * * and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases." His compensation, however, must be confined to services rendered prior to the appointment of the trustee. Up to that time the petitioning creditors are the moving parties in behalf of creditors. Thereafter the trustee represents these interests. His bill was fair and reasonable, and is approved and allowed. This same subdivision also covers and allows one attorney's fee for services to the bankrupt in involuntary cases while he is performing the duties required by the act. Mr. A. W. Orvis says he made the schedules and attended the examination of the bankrupt. He may be allowed $50, and no more. The whole contest and litigation was to compel this bankrupt to disclose, uncover, and disgorge concealed property belonging to his estate in bankruptcy, and which the referee found, and this court found on appeal, he had knowingly and fraudulently concealed while a bankrupt from his trustee in bankruptcy, to the amount of $6,000. He has turned over $3,400, and no more. Upon what theory the referee awarded at least $650 from this estate, recovered by the trustee from this bankrupt, who was wrongfully concealing it, to Orvis, who was aiding him in so doing, and who still aids him, and who has already been paid for his services, as appears from the bankrupt's own statements, this court fails to discover. At the same time that the referee makes allowances to the attorney for the wrongdoer who concealed the property, and whose services, except as allowed for, were rendered in aiding the concealment (it may be the attorney did not know the guilt of Felson), he also makes allowances to the amount of upwards of $2,500 for legal services performed in the attempt to uncover the concealed property. In short, $3,400 was recovered. The referee allows over $4,000 for the work performed and disbursements incurred in doing the job, and divides it between the attorney who aided to conceal and those who aided to uncover. The allowance of disbursements to the jewelers' association cannot be approved. There is no law permitting such an allowance. To Mr. H. Walter Lee, who acted as receiver, this court made an allowance of $150—an amount within the percentage allowance permitted by the act. See subdivision 5, § 2, which declares the policy of the law, and reads:

"(5) Authorize the business of bankrupts to be conducted for limited periods by receivers, the marshals, or trustees, if necessary in the best interests of the estates, and allow such officers additional compensation for such services, but not at a greater rate than in this act allowed trustees for similar services." Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 409].

To Mr. Lee, as trustee, the referee makes an allowance of $184.10 for disbursements. His statutory commissions and compensation

given by section 48 of the act (Act July 1, 1898, c. 541, 30 Stat. 557, 558 [U. S. Comp. St. 1901, p. 3439]), amounting to $154.87. The referee also allows $250 to the trustee, in addition to such compensation, for the reason that he is a lawyer, and performed services as such for himself as trustee. At the same time his attorneys are allowed nearly $1,000 for services, and other attorneys for creditors over $2,000, all from the estate, for doing the work (it is alleged) the trustee's attorneys should have done. This court, in allowing $150 to Mr. Lee for compensation as receiver, in effect doubled the commissions. By this process of "allowances" the trustee would be permitted to take from this estate of $5,743.62 the sum of $554.87 in addition to his disbursements for administering this estate in bankruptcy. This court has heretofore held, after careful examination and consideration, that a trustee in bankruptcy, "though an attorney, is not bound to perform legal services for the estate represented by him, but if he does so he cannot have compensation therefor from the estate." In re McKenna (D. C.) 137 Fed. 611, decided May 16, 1905. This court there said, and now repeats:

"It is well settled that a person, being a trustee, cannot perform legal services for himself as trustee, and have compensation therefor from the estate he represents. Nor is he under obligation to perform such legal services because he is the trustee. In many cases the compensation permitted by the bankruptcy act to a trustee in bankruptcy would not pay 10 per cent. of the value of the purely legal services rendered in addition to those legitimately performed by the trustee in the discharge of the usual duties of that office. However, when a trustee performs legal services, he cannot have additional compensation therefor."

See 1 Perry on Trusts (2d Ed.) § 432; Parker v. Day, 155 N. Y. 383, 49 N. E. 1046; Collier, as Executor, v. Munn et al., 41 N. Y. 143.

Collier on Bankruptcy (5th Ed.) referring to this question, says (page 474):

"It was held early in the administration of the present law that a trustee who was also an attorney could be allowed the same fees that would have been paid to other competent counsel. This may be doubted, the trustee's fee being limited by section 48 and general order 35 (3), 89 Fed. xiii, 32 C. C. A. xxxiv."

In re Florence B. Mitchell, 1 Am. Bankr. Rep. 687, is but the opinion of a referee, and is not sustained by reason or authority. The referee cited Perkins' Appeal, 108 Pa. 314, 56 Am. Rep. 208. It was there held:

"(1) The just and proper compensation of a trustee depends upon the circumstances of each case, and cannot be determined by an inflexible rule. Such compensation may be claimed and awarded in a gross sum, and not by way of commissions.

"(2) A trustee, who is also a member of the bar, may be allowed credit in his account for a fee to himself for professional services rendered by him to, and for the benefit of, the trust estate, shortly prior to his appointment as trustee.

"(3) A trustee, who is a member of the bar, may be allowed compensation for services of a professional character rendered by him, after his appointment as trustee, in the investigation of an account filed by the executors of his deceased predecessor in the trust, in addition to compensation for the performance of his ordinary duties as trustee."

It will be noted there was no statute fixing the compensation of trustee. His compensation was based on a quantum meruit. Hence all the trustee did was properly considered and allowed for. In matters in bankruptcy the compensation of trustees, before the amendment of February 5, 1903, as since, was fixed by the act (section 48, Act July 1, 1898, c. 541, 30 Stat. 557, 558 [U. S. Comp. St. 1901, p. 3439]). See, also, general order 35 (89 Fed. xiii, 32 C. C. A. xxxiv), adopted by the Supreme Court of the United States, subdivision 3, which reads:

"(3) The compensation allowed to trustees by the act shall be in full compensation for the services performed by them; but shall not include expenses necessarily incurred in the performance of their duties and allowed upon the settlement of their accounts."

The allowance of $250 to the trustee not only violates the provisions of the act, but the general order of the Supreme Court. That allowance must be disallowed.

It appears that James C. Dolan did perform some services for the trustee. The court finds from the proof that the value of such services was $125, and his allowance is reduced to that amount. He has already been paid $63.20 disbursements. Hastings & Gleason have been paid $381.03 disbursements allowed by this court. The amount of their allowance for services to the trustee is reduced to $600, which is found to be a full and fair compensation for all services rendered by them to the trustee as his attorney. To this will be added the disbursements not heretofore allowed and paid. It has been seen, in reciting the appearances in the proceedings before the referee, that on each occasion, with one exception, that firm appeared for petitioning creditors and creditors and the jewelers' association, not for the trustee. These attorneys must look to their creditor clients for further compensation, if they are entitled thereto. Let the dividends go to the creditors, and let the creditors pay their attorneys. It is not for the court or referee to undertake, by "allowances," to see that the attorneys for creditors are taken care of. It is the duty of the court to take care of the creditors, and the duty of the creditors to take care of their attorneys, except in cases where allowances are directly authorized and permitted. The bankruptcy act of 1898 was framed and must be administered in the interest of creditors. This is a case where the transactions and conduct of the bankrupt justly aroused the indignation of the whole jewelry trade. The association took up the matter, and have pressed it honestly and sincerely in aid of the trustee; but this court cannot find, and indeed there has been no suggestion, that the trustee failed in his duty, so as to warrant allowances from the estate to creditors and associations who generously came to his aid because of the general desire and determination to vindicate the law.

The court has made and filed an order modifying the order under review in accordance with this opinion.