## In re CAMEO CURTAINS, Inc.
### No. 54378.

District Court, S. D. New York.
Aug. 3, 1933.

Jacob J. Lesser, of New York City (Lawrence S. Lesser, of New York City, of counsel), for bankrupt.

Hahn, Abeson & Golin, of New York City, for receiver.

COXE, District Judge.

This is a motion to require a bankruptcy receiver to pay to the bankrupt the sum of $814.64, representing three disbursement items claimed as credits by the receiver in its final accounting, namely: (1) $255.37 charged for "watchman's" and "custodian's" expense; (2) $139.77 paid as commissions for collecting outstanding accounts; and (3) $357.50 claimed as an excessive payment for use and occupation of leased premises. It is insisted that these three items are not properly chargeable against the bankrupt estate, and that the receiver is illegally withholding the amounts represented by them.

On May 31, 1932, an involuntary petition was filed against the bankrupt, a manufacturer of finished curtains, with a plant at Yonkers, N. Y., and a sales office in New York City. On the same day, the Irving Trust Company was appointed receiver, with enlarged powers under General Order 40 (11 USCA § 53). The order of appointment contains the following provision:

"Ordered that the Receiver be and it hereby is authorized, in its discretion and without further order of this Court from time to time during the receivership herein to employ such of the following as in its judgment are necessary for the administration of the estate, to wit: watchmen at the rate of compensation of $5 to $8 per eight-hour working day and $1 per hour for overtime; custodians at the rate of compensation of not to exceed $12 per eight-hour working day, or $2 per hour for part-time service; collection agents or agencies to collect accounts receivable of the alleged bankrupt, at a rate of compensation of not to exceed ten per centum of the gross amounts collected; the watchmen and/or cus-

todians so employed to devote such time to the affairs of the estate and to perform such services therein as the Receiver in its discretion may from time to time direct, including the taking of inventory, the examination of books of account, the gathering of information and the supervision of any sale directed herein; and it is further

"Ordered that for such purposes the Receiver may, in its discretion, retain and employ the services of its own employees; provided however, that the payment of compensation for their services to the estate in bankruptcy shall in no case, directly or indirectly, result in any saving, gain or profit to the Receiver."

Thereafter, and while the Irving Trust Company was still acting as receiver, the bankrupt offered a composition to its creditors, and on October 21, 1932, an order was signed, confirming the composition, and directing the receiver to return to the bankrupt the remaining property in its possession. The receiver thereupon surrendered to the bankrupt the physical assets, and on November 16, 1932, turned over to the bankrupt's attorney a check for $725.92 representing the cash balance in its hands, after deducting all disbursements and expenses of administration; and in the receiver's final accounting, copy of which was sent to the bankrupt on November 22, 1932, the receiver credited itself with the payment of the various amounts now objected to by the bankrupt.

■■ It is well settled that under the existing Bankruptcy Act a receiver is not entitled to anything by way of compensation for services beyond the regular statutory commissions, Bankruptcy Act, § 72 (11 USCA § 112); In re George Halbert Co. (C. C. A.) 134 F. 236; Holland v. McIlwaine (C. C. A.) 223 F. 777; In re Felson (D. C.) 139 F. 275; and this is so, regardless of the personality of the receiver or the character of the service rendered, In re Detroit Mortgage Corporation (C. C. A.) 12 F.(2d) 889. But section 62 of the Act (11 USCA § 102) expressly provides that the "actual and necessary expenses incurred * * * in the administration of estates" shall be paid; and reasonable expenditures for preserving the assets are clearly allowable, In re Mitchell (C. C. A.) 212 F. 932; as also are other actual and necessary expenses incurred in the administration of the estate. In the present case, the receiver makes no claim to compensation in addition to its regular commissions, but seeks to justify the disputed items merely as actual and necessary expenses incurred in the administration of the bankrupt estate.

■ The "watchman's" and "custodian's" expense of $255.37 is not to be disallowed merely because it covers the services of persons in the regular employ of the receiver. The use of such persons is expressly authorized by local bankruptcy rule 29, which reads as follows: "The Receiver shall not employ persons merely for the purpose of guarding property when there are other adequate methods of protecting the same at less expense. He may, upon standing orders of the Court or special orders of the Court or the Referee in charge of the case (in addition to attorneys and accountants), employ such persons as may be necessary or desirable to inventory, appraise, exhibit, sell and deliver merchandise, and/or for other purposes in connection with the proper administration of the estate, and persons in the regular employ of the Receiver may be used for such purposes. The reasonable and proper expense thereby incurred shall be a charge against the estate. The Receiver may employ agents, at reasonable percentage rates of compensation out of collections actually made, to collect accounts payable to bankrupt estates."

The principal reason for the designation of the Irving Trust Company as standing receiver in bankruptcy was to have a responsible and fully equipped institution to handle economically and expeditiously bankrupt estates of every kind, large and small. Manifestly, this object could not be attained if, at the commencement of each bankruptcy proceeding, the receiver were compelled to improvise a separate organization to administer the particular estate involved; and, in order to avoid any such cumbersome method of administration, the trust company was allowed to recruit a group of skilled persons capable in most instances of performing the necessary routine work required; and these persons were given regular employment by the trust company.

The services performed by such employees are of the same general character as were frequently rendered by assistants to the receiver under the old system; and there is no reason why such services should not be compensated for out of the particular estate benefited just as much under the present system as under the old. Moreover, the trust company charges only for the actual labor cost of the various employees working on each estate; and the method adopted of computing this cost in advance, and charging for the services

at a predetermined hourly rate, is not open to criticism. Indeed, in the case at bar, it clearly appears that the actual out of pocket expense to the trust company of the time of the different employees engaged in work on the case exceeded the amount charged to the bankrupt.

It is, however, insisted that the receiver has charged for services not properly allowable as administration expense, and much of the criticism in that respect is due to the somewhat unfortunate use of the terms "watchman" and "custodian" as applied to services having no proper relation to those occupations. But it is the character of the service performed, and not what it is called, which determines the validity of the charge in each particular case.

■■ In the present proceeding, the receiver has utilized during the period from June 1, 1932, to November 7, 1932, portions of the working time of 18 employees; and the services of these men fall roughly into the following general categories: (1) Consultations by representatives of the receiver with other employees detailed to particular work on the case; (2) conferences with creditors, attorneys, officers of the bankrupt, and others interested in the proceeding; (3) correspondence, attendance before the referee, instruction of persons assigned to particular tasks, and routine office work performed at the receiver's main office in connection with the receivership; (4) time occupied by representatives in going to and from the bankrupt's place of business at Yonkers, or the sales office in New York City, to preserve the assets, inventory or appraise the property, or exhibit the merchandise to intending purchasers; (5) services performed in taking the inventory, attending at appraisals, serving papers, searching for missing records, assisting in the removal of property, and delivery of possession to the bankrupt.

The services mentioned above in (1), (2), and (3) are only such as have always been compensated for by the statutory commissions, and, except in unusual and particularly onerous cases, I do not think it is proper for the receiver to charge for them as administrative expense. I am satisfied, also, that payment for such services is not covered by rule 29, or by the order of May 31, 1932, appointing the receiver. With respect, however, to the services described above in (4) and (5), it has invariably been the practice in bankruptcy cases to delegate such work to outside assistants, and charge the cost as an administrative expense; and I think that under the present system the receiver is clearly entitled to credit itself with any reasonable disbursement for such purposes.

It follows that a portion of the charge of $255.37 for "watchman's" and "custodian's" expense must be disallowed; and, in view of the fact that the papers do not contain sufficient data to permit a separation of the item, there will have to be a further showing in order definitely to determine the amount which the receiver should return to the bankrupt.

■ The item of $139.77 paid for collecting the accounts represents a flat commission of 4 per cent. on collections of $3,494.28; and it is contended by the receiver that the work was performed by an outside agency known as Estates Collection Service. The answering papers show, however, that Estates Collection Service is merely a department of the trust company, financed and operated as part of the receivership division; and neither the contract referred to in the receiver's affidavits, nor the certificate of conducting business, filed with the state authorities, indicate anything to the contrary. I am clear, therefore, that the Estates Collection Service was not an outside agency separate and distinct from the receiver; and the language of rule 29 is not susceptible of an interpretation that the receiver may use one of its own departments for collecting accounts, and charge any part of the cost against bankrupt estates as an administrative expense. Neither does the provision in the order appointing the receiver, to the effect that the receiver may use its regular employees for such a purpose, alter the situation, as this provision, in so far as it relates to collection agents, is plainly contrary to rule 29, and, to that extent, invalid. The part of the motion directed against the collection charge of $139.77 is therefore granted.

■■ With respect to the item of $357.50, claimed as an excessive payment for use and occupation, it is conceded that the amount paid by the receiver was the rent stipulated in the lease; and this prima facie is the reasonable value of the receiver's use and occupation. In re Sherwoods (C. C. A.) 210 F. 754, Ann. Cas. 1916A, 940. Furthermore, the payment was made with the tacit approval of the bankrupt, and there is nothing to show that the amount was in any way excessive. The portion of the motion relating to the rent payment is therefore denied.