Where testatrix devised and bequeathed property to her executors as trustees, to apply so much thereof as they should deem judicious for the care, support, and maintenance of her husband, the executors, as trustees, took title only to so much of the estate as was expended for the care and support of the beneficiary, and are entitled to commissions in both capacities on so much only.

2. EXECUTORS—COMMISSIONS—CONVERSION OF REALTY.

Where a will authorizes a sale of all the real estate of testatrix, the real estate becomes personalty as of the time of her death, for the purpose of determining whether the personal property, over all her debts, amounts to $100,000, and therefore entitles the executors to full commissions each, under Code Civ. Proc. § 2736.

3. SAME —COMPUTATION—ACTUAL DISBURSEMENTS.

While, in such case, each of the executors is entitled to full compensation, commissions will be allowed only on the moneys actually received and paid out.

Proceedings for the judicial settlement of the accounts of Spencer Clinton and others, as executors, etc., of Harriet A. Bennett, deceased.

Adolph Rebadow, for Spencer Clinton and others.

Clark H. Timmerman, for infant legatees.

MARCUS, S. This is a proceeding for an accounting, in which the principal questions to be determined arise from certain claims made by the executors and trustees for commissions under the statute. The amount involved and the question to be considered lead me to give my reasons for reaching conclusions hereinafter expressed.

The executors and trustees of this estate claim each to be entitled to full compensation in both capacities, on the ground that, as trustees, they became entitled, under the will of decedent, to charge commissions when their duties as such trustees became ended and terminated by the death of David S. Bennett, and that, since the death of David S. Bennett, they became and are entitled to charge commissions as executors, and also to be allowed commissions on the value of certain real estate devised to them in trust, and remaining unsold at the present time. Harriet A. Bennett died on the 2d day of February, 1894, leaving a will, which was proved, and letters testamentary issued to Spencer Clinton, Truman G. Avery, and Georgiana W. Jenks, as executors. They entered upon the discharge of their duties, and now present their account for judicial settlement. No objections are made to the account, and the same must therefore be allowed as filed. To the claims of the executors for commissions as trustees, the special guardian for the infant legatees objects. The account shows that the personal estate of the testatrix amounted to $66,299.29; her real estate being the Bennett elevator, valued at $500,000, and an income thereof since her death,

amounting to $94,606.21. If the claim of the learned counsel for the executors is good, then two commissions must be allowed to each of the three executors, in the two capacities of trustees and executors, amounting to about $36,000, for their services. This matter has been presented and briefs filed upon the theory that the test alone is, in this case, whether the duties of the offices of executors and trustees are "interwoven, inseparable, and blended together," or whether they were separable, distinct, and not co-existing. Under item 3 of the will of the testatrix, the following words are used:

"I give, devise, and bequeath all my estate, both real and personal, including all claims and demands which I may possess, not hereinbefore devised, to my executors hereinafter named, as trustees, to have and to hold the same upon the following trust: To apply the income thereof, and so much of the principal thereof as, in their judgment, shall be judicious, for the care, support, and maintenance of my husband, David S. Bennett; and I give them full power and authority to use the whole of said principal and income for that purpose, if, in their judgment, it shall be advisable to do so to secure his happiness and comfort."

The counsel for the executors claim that they are entitled to compensation as trustees, upon the proposition that this trust is separable and distinct from the administration of the estate; while the special guardian contends that the two functions seem to co-exist during the whole duration of the trust; that the duties of the executors do not cease before those of the trustees begin; and, further, that the will provides that the estate should go first into the hands of the executors, for the purpose of carying out items 1 and 2, and then to the trustees, for the purpose of carying out item 3, and then again into the hands of the executors, for the purpose of carrying out the remainder of the provisions of the will, making the trust an incident to the duties of the executors, which began before the commencement of the trust, and continued through its whole duration and after its determination.

In the view I take of this matter, I deem it unnecessary to determine whether the functions and duties of the executors as such, on the one hand, and as trustees, on the other, are separable and distinct. The executors are not accounting as trustees. The death of David S. Bennett, which occurred on the 6th day of November, 1894, terminated the trust, and the duties, powers, and functions of the trustees thereupon ceased. Undoubtedly, they would have had the right to expend the entire estate, under the trust, for his benefit, if they had deemed the same judicious, for they had the authority to do so. But they did not. The estate goes back from the trustees to the executors, by operation of law; for the trust does not mention or direct what shall be done with the residuum of the trust estate after the death of David S. Bennett. The trustees took title only to so much of the estate as was expended for the care and support of the cestui que trust, and they are entitled to commissions pro tanto. The estate of the trustees took priority over the estate of the executors only for the purpose of the trust, and to no greater extent, and the unsold lands, being the Bennett elevator, passed upon the termination of this trust to the executors.

The counsel for the executors argues that the executors, as trus-

tees, are entitled to commissions upon the entire estate comprehended by the trust, if the trustee had expended but 50 cents for the cestui que trust, and he then had died before any further expenditure had been made by the trustees in his behalf. I cannot agree to such a contention. Under the common law, a trustee was entitled to no compensation; but the statute now gives commissions, but always upon the assumption that something has been done by the trustees to entitle them to the same, and that services of some kind were rendered. Nowhere in the account in this case (which must be regarded as a distinct admission of all matters stated therein) can be found a payment or transfer of any property as trustees. There are no vouchers, receipts, or payments in this large account made as trustees, unless it be the small sum charged to the account of David S. Bennett, amounting to $236.25, and the household expenses, amounting to $2,339.04; and, while doubt might be expressed as to these amounts, I am satisfied to allow and recognize the expenditures of these sums by the executors in their capacity as trustees. The trustees took such an estate only as was commensurate with their trust, and commissions can be computed only to such an extent. Any other view would result in paying for services not rendered; and to allow to the executors, as trustees, the sum of about $18,000, upon the theory that they had the right to convert the estate comprehended by the trust, but which they did not do, because of ample means from other sources to maintain the cestui que trust, would be injecting life into a dead trust, with no other purpose than to enrich these executors, as trustees, for services never performed.

The counsel for the executors sought, upon the hearing, to estimate the value of the unsold real estate, in order to fix a basis for computing the commissions of the trustees, and such testimony showed the elevator property to be worth, taking the minimum amount given, $500,000. The case of Phoenix v. Phoenix, 28 Hun, 629, cited in the brief of counsel for the executors, which held: "In a trust of this nature, where the entire control and management of the real estate is confided to the trustees, the decisions are uniform in holding that their commissions are to be cast upon the value of the real estate, as a safe, prudent, and uniform mode of ascertaining the value of the services rendered by the trustees,"—was reversed in Phoenix v. Livingston, 101 N. Y. 451, 5 N. E. 70, as to the allowance of commissions upon the value of unsold lands. No values can be estimated in order to fix commissions in advance of conversion into money, nor can commissions be allowed on unsold lands. The mere holding of title will not be deemed money for the purpose of computing commissions. Matter of McLaren's Estate, 6 Misc. Rep. 483, 27 N. Y. Supp. 289; Phoenix v. Livingston, 101 N. Y. 451, 5 N. E. 70. The rule laid down in the case of McAlpine v. Potter, 126 N. Y. 290, 291, 27 N. E. 475, clearly decides that no commissions can be based upon estimated values. Since there is nothing but unsold elevator property claimed by the trustees on which to base commissions, none could be allowed the trustees until actual conversion into money or its equivalent. There was "no receiving and pay-

ing out any moneys," which acts are essential before commissions can be allowed.

The special guardian also objects to the executors each receiving full commissions on the ground that the personal property, as shown by the account of the executors, does not amount to $100,000, or more, over all her debts, and thus come within section 2736 of the Code of Civil Procedure, so that each of the three executors may be entitled to full commissions. I cannot agree with him in this contention. While it is true that the account does not show the personal property of the testatrix to have been of the value of $100,000 or more, yet by adding the value of the elevator property of which she died seized, and which remains unsold, the total value of her property will then largely exceed $100,000.

An examination of the will satisfies me that the testatrix directed a conversion of the elevator property. The will directs a sale of all of her real estate. The duty is obligatory, and by virtue of such direction, under the well-known rule of conversion, the real estate becomes personalty as of the time of her death. Stagg v. Jackson, 1 N. Y. 212; White v. Howard, 46 N. Y. 162; Greenland v. Waddell, 116 N. Y. 240, 22 N. E. 367; Redf. Prac. tit. "Canon of Interpretation," 14. Although the moneys actually received by the executors do not exceed $100,000, yet, for the purpose of ascertaining the value of the personal property over all debts, evidence was properly given to show that the remainder of the unadministered estate will exceed $100,000, so that the court can determine whether the allowance should be a full compensation to each executor, or a full compensation to all; but the executors are entitled to no more compensation than for moneys actually received and paid out. The executors can, therefore, only be entitled, on this accounting, to commissions on the moneys actually received and paid out.

I therefore conclude to allow to each executor full commissions upon the moneys actually received and paid out, as shown by their account, and to allow a single commission in their capacity as trustees upon the amount expended in behalf of David S. Bennett. The individual claims of the executors against the testatrix, proved before the surrogate, are allowed as proven.