In the Matter of the Estate of WILLIAM HALL WALKER, Deceased.*

Surrogate's Court, New York County, December 28, 1930.

*Greene & Hurd*, for the trustees.

*Dean, King & Smith* [*Nathan L. Miller, Frederick P. King, Francis B. Hamlin* and *H. Bartow Farr* of counsel], for the Lawyers Title and Trust Company.

*Martin Conboy* [*Martin Conboy* and *David Asch* of counsel], for the objectant.

*Griggs, Baldwin & Baldwin*, for Gertrude D. Walker.

*Jeremiah F. Connor*, referee.

O'BRIEN, S. In this, the second intermediate accounting of testamentary trustees, there is a question as to commissions for receiving the corpus of the trusts. Upon the first intermediate accounting, which was settled by decree May 19, 1922, commissions for receiving were allowed on 6,034 shares of the old common stock of the Eastman Kodak Company, which stock formed the bulk of the principal of the trusts. The stock had been assigned the

* See, also, 138 Misc. 149.

market value of $520 per share, which value was then used in computing the one-half statutory rate of commissions for receiving. The corpus of the investment was afterwards converted from non-legal to legal securities and because of such conversion there is a total profit of $879,748.09. During the period of administration covered by this accounting the securities in question enchanced in their market value and were sold, a small portion at a cash profit of $89,480, and the rest at a very substantial profit, viz., in the Brookside trust $467,105 and in the residuary trust $412,643.09, total $879,748.09. However, the latter securities were not turned into money by the sale or transfer, but were exchanged for municipal bonds, upon the market value of which the above profits or increment is computed.

The trustees are justified in their contention that one-half commissions are allowable upon the increment received on the securities held by them, but *they are in error when they assert that such commissions must be allowed upon this intermediate accounting* where, it appears, the trust funds are still in the form of securities and have not "been sold and converted into money." This question raised by the trustees upon their present accounting has never been raised or determined in this court. The cases cited by the trustees as authority for their contention are not directly in point. In one of them (*Hawley* v. *Singer*, 3 Dem. 589), in which it should be noted it does not appear that the funds in question are not money, Surrogate COFFIN, in referring to commissions of a trustee, stated: "The statute, if now applicable, would authorize an allowance to him of only such commissions as could be granted to an executor or administrator. The latter frequently have a second and third accounting. In such cases, they are entitled, on the first accounting, to full commissions on all moneys received and paid out, and half commissions only on moneys received and not paid out. On the second accounting, they are allowed the other half, on money since paid out, and full commissions on the increase received and paid out, or directed by the decree to be paid; *taking care, however, that all of such commissions shall not exceed what would have been the full commissions had the whole estate been settled on one final accounting*. That is the mode in which commissions are allowed on 'all accountings' of executors and administrators; and it seems to me that is all which is contemplated, in reference to the compensation of trustees, by the act of 1866.*" If the principle here laid down that in successive accountings "*all of such commissions shall not exceed what would have been the full commissions had the whole estate been settled on one final accounting*" be correct, then it will be violated by holding that commissions on receiving an increment not yet converted into money may be allowed in an inter-

---

* See Laws of 1866, chap. 115.

mediate accounting, for the simple reason that it may so happen that upon the final accounting the increment which accrued during the period covered by the present accounting may, before the final accounting, be lost or diminished, and thus the total of commissions would exceed " what would have been the full commissions had the whole estate been settled on one final accounting." Moreover, analyzing the statute itself, we find no express or implied provision warranting commissions upon *increment not yet realized or turned into cash or not yet distributed or delivered.* Certainly section 285 of the Surrogate's Court Act offers no support for the contention of the trustees. Increment has been defined as " that which is added; increase   *   *   *."

Can it be argued that in this accounting, where trustees are not terminating their trusteeships nor making any distribution of funds, the difference between the price of $520 per share of said stocks and the present market price of the substituted securities still held by the trustees is something " added to " said trust funds and a real " increase? " The only logical method of measuring commissions on receiving increment, with fairness to all concerned, is upon the final accounting of the trustees. To hold otherwise would mean the opening of the door to great injustices to those interested in trust funds.

The trustees, therefore, will be allowed in this accounting commissions for receiving the increment only upon such securities as were sold for cash; and commissions for receiving the increment on securities not yet converted into cash will await an accounting covering a period when they, or part of them, shall have been converted into cash or otherwise until a final accounting when said securities are converted into cash or distributed in kind. Proceed accordingly.