In the Matter of the Estate of CHRISTOPHER R. CORNING, Deceased.

Surrogate's Court, Orange County, September 11, 1936.

*Fraser, Speir, Meyer & Kidder* [*Schuyler M. Meyer* of counsel], for David S. Iglehart, Arthur Turnbull and Bank of New York and Trust Company, as trustees.

*Russell Wiggins*, special guardian.

TAYLOR, S. The problems presented may be very simply stated, and it would seem that in larger estates they must be of more or less daily occurrence, yet painstaking and diligent research on the part of counsel, as well as the efforts of the surrogate, have failed to disclose any existing pertinent authority.

The first question for determination is with respect to claimed commissions upon alleged increment in the corpus of the different trusts involved. To take the figures from one of the trusts, it appears that there was an increase in the corpus arising from sales, redemptions and collections at maturity of various securities in the sum of $34,393.16, and upon this amount receiving commissions are asked. It appears, however, from the following schedule in the accounts that there were decreases or losses arising from sales, redemptions and collections at maturity of certain estate assets in the sum of $59,652.01, so that offsetting one against the other there was a net decrease or loss in corpus of $25,258.85. It is the contention of the trustees that this increase, for the purpose of computation of commissions, may be separated from the item of decrease or loss.

Finding no pertinent authority, a conclusion must be reached by consideration of the evident purpose of the statute and analogous cases.

At common law, executors, administrators and trustees were entitled to no compensation for serving as such, the honor of the appointment alone being sufficient recompense. (3 Woerner American Law of Administration, § 524; *Collier* v. *Munn*, 41 N. Y. 143; *Matter of Clinton*, 16 Misc. 199.)

Being in derogation of the common law, statutes providing for commissions, according to well-settled rules of statutory construction, are to be strictly construed. (*Matter of Chinsky*, 159 Misc. 591; *Psota* v. *Long Island Railroad Co.*, 246 N. Y. 388; *Dean* v. *Metropolitan Elevated Railway Co.*, 119 id. 540; *Matter of Coffin*, 152 Misc. 619; *Matter of Zweig*, 145 id. 839; *Matter of Smith*, 136 id. 863.)

The statute (Surr. Ct. Act, § 285) provides that " the value of any real or personal property, to be determined in such manner as

the surrogate may direct, *and the increment thereof*, received, distributed or delivered, shall be considered as money in making computation of commissions." (Italics mine.)

This problem turns upon the definition to be given to the word " increment," which, so far as I have been able to discover, has not been judicially defined.

Dictionary definitions are: " Increment. An increasing; growth in bulk, quantity, number, value, etc.; enlargment; increase. That which is gained or added." (Webster's New Internat. Dict.) " The act or process of increasing, augmenting, or growing; enlargement; * * *. That which is added; increase: opposed to *decrement*." (Funk & Wagnalls' New Standard Dict.)

Since, in the illustration given, there was, after the balancing of accounts, a decrease rather than an increase in the corpus of the trust, can it be said that there was an " increment " in the corpus? I think not. One cannot close his eyes to the loss side of an account. If the trusts in question were to immediately fall in, the trustees could not in truth say to the remainderman that there had been an increase in the corpus of the trust, while at the same time handing over to the beneficiary an amount less than was shown in the previous accounting.

Were the trustees' contention to prevail, then it would follow that upon the sale of real estate, commissions would be computed upon the full sale price regardless of deductions for incumbrances, but such is not the law. (*Farmers' Loan & Trust Co.* v. *Turner*, 242 N. Y. 240; *Matter of Farrington*, 149 Misc. 691; *Matter of Butterworth*, 158 id. 477; *Matter of Mercantile Trust Co.*, 210 N. Y. 83; *Matter of Mills*, 149 Misc. 389; affd., 239 App. Div. 817; affd., 263 N. Y. 574; *Matter of Horner*, 126 Misc. 772.)

Analogy may also be drawn to that line of cases which hold that commissions may be had only upon the equity in pledged personal property. (*Matter of McCabe*, 154 Misc. 279; *Matter of Johnson*, 156 id. 689; *Matter of Mills*, 149 id. 389; affd., 239 App. Div. 817; affd., 263 N. Y. 574; *Farmers' Loan & Trust Co.* v. *Turner*, 242 id. 240.)

Reference is made to *Matter of Byrnes* (159 Misc. 302) and *Matter of Sidenberg* (204 App. Div. 255), which lay down the rule that while a trustee is entitled to compensation for the collection of rents and the management of real property at the rate of five per cent of the gross rents, nevertheless he is not entitled to statutory commissions on the same gross rents, inclusive of the expenditures in the management of the property, but only upon the net distributable balance of the rents. Applying the rule advanced by the trustee here, it would follow that gross rents would be income, and that commis-

sions would be computed thereon. In the *Byrnes* case the surrogate said, " since regular commissions apply only to the capital of the estate * * * it is only an *accretion* to capital or a diminution of capital by way of capital payment which furnishes a basis for such commissions at all." (Italics mine.)

So, too, we may use the analogy of the continuance of the testator's business by the executor, with its gross receipts, payments for merchandise, clerks, etc., in which cases commissions are allowed on net income only. (*Matter of Sidenberg*, 204 App. Div. 255; *Beard* v. *Beard*, 140 N. Y. 260; *Matter of Byrnes*, 159 Misc. 302; *Matter of Hayden*, 54 Hun, 197.)

*Matter of Hawley* (142 Misc. 396) has been cited as authority for the contention that full statutory commissions for both receiving and paying out the increased value of securities should be allowed trustees, but a glance at that case demonstrates that there was an increase instead of a decrease in the corpus.

It appears that substantially all the corpus in the various trusts is now invested, and this fact may bring this case within some of the rules laid down in *Matter of Walker* (138 Misc. 879), wherein the surrogate said: " If the principle here laid down that in successive accountings ' all of such commissions shall not exceed what would have been the full commissions had the whole estate been settled on one final accounting ' be correct, then it will be violated by holding that commissions on receiving an increment not yet converted into money may be allowed in an intermediate accounting, for the simple reason that it may so happen that upon the final accounting the increment which accrued during the period covered by the present accounting may, before the final accounting, be lost or diminished, and thus the total of commissions would exceed ' what would have been the full commissions had the whole estate been settled on one final accounting,' " and " The only logical method of measuring commissions on receiving increment, with fairness to all concerned, is upon the final accounting of the trustees. To hold otherwise would mean the opening of the door to great injustices to those interested in trust funds." Even if we consider this accounting a final one as to the resigning trustee, it is obvious there has been no " increment " to principal, but rather a decrease of principal.

" Estate Accounting and Taxation," by Saxe and Levy, in chapter XII, entitled " Problems on Executors' Commissions," while not mentioning the precise point in the text, nevertheless in the illustrative set-up with figures for the calculation of commissions on corpus, there is added to the inventory the amount of increases, and then there is deducted the decreases, the balance being subject to receiving commissions.

The conclusion reached upon this problem is that there has been no increment in principal and, therefore, there can be no allowance of receiving commissions on the sale of a part of the securities at a profit.

I do not mean to intimate that if trustees receive an increment to principal from an outside source, and not the result of their management of the corpus initially intrusted to them, there should not be receiving commissions upon this item even though it should appear upon the final accounting that because of losses in the sale of estate assets there should be a net decrease in principal.

The second problem is as to the claimed allowance of commissions upon the paying out of so much of the principal to the trustees themselves as is represented by receiving commissions; in other words, may the trustees receive commissions for paying commissions to themselves? It is strange that there is a dearth of authority upon this question also.

The only case found by the surrogate treating this question is *Betts* v. *Betts* (4 Abb. N. C. 316, 438), in which commissions were disallowed upon an item representing that part of the commissions paid to the estate of the accountant's coexecutor, the court saying " upon the commissions so to be allowed [to estate of deceased's coexecutor] the executors now acting claim commissions. I see no good reason for such claim. It is not upon every act of parting with money that executors become entitled to commissions, or they would be allowed upon re-investments. In this case they only hold what belonged to a co-executor, who was prevented by death from receiving it in person without the intervention of the present executors, had she so chosen. I cannot allow this claim."

There is no " paying out " of commissions, executors or trustees already having the funds in their possession; they merely retain for themselves individually that which they already have in another capacity. (See Forms of Decrees on Accounting, 7 Wait Pr. p. 841; 2 Jessup-Redf. Surr. Cts. pp. 2637, 2639; 5 Heaton Surr. Cts. p. 288.)

The trustees will be denied commissions computed upon the sum paid to them out of principal as receiving commissions.

Settle decree on five days' notice, or by consent.