In the Matter of the Estate of JAMES G. WILSON, Deceased.

Surrogate's Court, Westchester County, May 12, 1938.

*Sage & Schoonmaker*, for the trustees.

*Julius Weiss*, special guardian for George Napier Wilson and Shirley Wilson, minors.

MILLARD, S. Decedent died on January 17, 1922, leaving a will which was admitted to probate on January 27, 1922. On the same day letters testamentary were issued to William H. Sage, Columbia Trust Company and Grace Wilson, who were named as executors in said will. Their account as executors was judicially settled by decree on July 12, 1923. Thereafter they qualified as trustees. Columbia Trust Company, one of the trustees, by the process of reorganization, has now become the Irving Trust Company. Upon the death of Grace Wilson, on October 5, 1936, her son, Lester G. Wilson, was appointed successor trustee under the provisions of the will. Grace Wilson left a will under which William H. Sage and Herbert S. Schoonmaker have qualified as executors. All of the above-named parties have joined in the present accounting proceeding, which covers the period from April 4, 1924, through July 1, 1937.

The accounting trustees have requested a construction of paragraphs "eighth," "ninth" and "fourteenth" of the will, which read as follows:

" *Eighth.* I give and bequeath to my executors and trustees herein named and their successors the sum of Ten thousand dollars ($10,000) in trust nevertheless for the following uses and purposes: they shall collect the income and profits thereof, pay all expenses for the proper care and maintenance of said trust fund including

taxes and other charges, and pay the net income derived therefrom to Ethel Beedle in quarterly payments for and during her natural life and on her death said principal sum shall fall into and form part of my residuary estate.

"*Ninth.* I give and bequeath to my executors and trustees herein named, and their successors the sum of Ten thousand dollars ($10,000) in trust nevertheless for the following uses and purposes: they shall collect the income and profits thereof, pay all expenses for the proper care and maintenance of said trust fund including taxes and other charges, and pay the net income derived therefrom to Adele Galletti for and during her natural life, and upon the death of the said Adele Galletti, I direct my said executors and trustees to pay the net income from said principal sum of $10,000 to Jack Galletti, her husband, for and during his natural life, and upon his death or upon the death of Adele Galletti without the said Jack Galletti, her husband, her surviving, said principal sum shall fall into and form part of my residuary estate.

"I further direct that in neither this trust nor in any trust mentioned in this will shall my trustees be required to give bonds for the discharge of their duties."

"*Fourteenth.* I give, devise and bequeath all the rest and residue of my estate real and personal, whatsoever and wheresoever situated, including all lapsed or invalid legacies or devises to my executors and trustees herein named and their successors, in trust, nevertheless, for the following uses and purposes: they shall collect the income and profits thereof, pay all expenses for the proper care and maintenance of said trust fund including taxes and other charges, and pay the net income derived therefrom to my beloved wife Grace Wilson in quarterly payments for and during her natural life, and on her death the principal of said trust fund shall be divided into two equal parts and the net income of one of said parts paid to each of my two children Lester Godfrey Wilson and James Godfrey Wilson, Jr., during the natural life of each respectively, and on the death of each his part of said principal fund shall be paid to the issue of such child so dying, share and share alike *per stirpes,* or in default of issue to his widow or if there be no widow then to the survivor of my said two sons or if there be no such survivor then to the issue of my said son leaving issue him surviving, or in default of such issue to my next of kin under the statute of distribution of the State of New York living at the time of such distribution.

"The provisions of this will for the benefit of my wife are made to her in lieu of all dower or other rights in my estate. Wherever in this will any part of my estate is devised or bequeathed to

' issue ' or ' next of kin ' it refers to the issue or next of kin *per stirpes* living at the time of the death of the next preceding life beneficiary. Wherever herein the term ' widow ' is used as entitling her to share in the distribution of any trust fund together with issue, said widow is to take an equal share with said issue, that is if there are three issue (*per stirpes*) then living and a widow, each of them is entitled to one quarter."

At the time of the death of this decedent, section 11 of the Personal Property Law provided as follows:

" § 11. Suspension of ownership. The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition or, if such instrument be a last will and testament, for not more than two lives in being at the death of the testator. * * * In other respects limitations of future or contingent interests in personal property, are subject to the rules prescribed in relation to future estates in real property."

This section was amended, effective September 1, 1930, but the amendment became applicable only to estates or wills of persons dying *after August 31, 1930*, and hence has no bearing upon the case at bar.

It becomes apparent, from a reading of paragraphs " eighth " and " ninth " of the will, that the trust provisions contained therein offend the statute, that is to say, that in both paragraphs it is provided that, upon the death of the primary beneficiaries, the corpus of the trusts created therein are to fall into and form a part of the residuary estate.

Under paragraph " fourteenth " of the will, a trust is set up for the benefit of two lives in being at the time of the execution of the will and since the life beneficiaries of the trusts under paragraphs " eighth " and " ninth " of the will were also in being at the time of its execution, the power of alienation is unlawfully suspended. The trusts created under paragraphs " eighth " and " ninth " are merely incidental to the main testamentary scheme of the decedent. Under the rule of judicial salvage, these trusts may be validated to the extent of the payments made to the primary beneficiaries, namely, Ethel Beedle, Adele Galletti and Grace Wilson. (*Matter of Trevor*, 239 N. Y. 6; *Matter of Green*, 146 Misc. 530, affd., 263 N. Y. 575.) Under the conditions existing here, no acceleration is possible. (*Matter of Kerwin*, 161 Misc. 364.) I, therefore, hold that, as to the principal of the trusts created under paragraphs " eighth " and " ninth " of the will, decedent died

intestate from and after October 5, 1936, the date of death of Grace Wilson.

Since, under paragraph "fourteenth" of the will, the provisions for the benefit of testator's wife are expressly made in lieu of " all dower or other rights in my estate," and she, having elected to take under the will, is thereby precluded from sharing in the intestate property (*Matter of Silsby*, 229 N. Y. 396, at p. 403; *Matter of Bloodgood*, 129 Misc. 398, at p. 400), this intestate property, therefore, will descend to the two surviving children of the testator, namely, James G. Wilson, Jr., and Lester G. Wilson, share and share alike.

The special guardian appointed for the two infants, George Napier Wilson and Shirley Wilson, has in his report raised certain questions and objections to the account.

The first question raised by the special guardian relates to the apportionment between principal and income of the proceeds of foreclosed properties. It appears from the account that interest has been allowed on advances of principal for foreclosure costs. This is contrary to the rule recently laid down in *Matter of Otis* (276 N. Y. 101), and to that extent the objection is sustained. In respect to the allocation of principal and income, the trustees are directed to be guided by and follow the principles laid down in *Matter of Chapal* (269 N. Y. 464) and *Matter of Otis (supra)*.

The special guardian further objects to the allowance of commissions to Lester G. Wilson, the successor trustee, in connection with the so-called Beedle and Galletti trusts, upon the ground that he was not appointed until after these trusts had terminated. This trustee was appointed pursuant to the express provisions of paragraph " second " of the will, upon the death of his mother, Grace Wilson. His duties and obligations with respect to the funds in the Beedle and Galletti trusts are identical with that of the other trustees. Regardless of whether title to these funds remained in the trustees after the death of the life beneficiary, they must nevertheless perform their duty in paying them over to those entitled to receive them. For this they are entitled to their commissions. (*Matter of Thomas*, 254 N. Y. 292.) *Matter of Coutts* (260 N. Y. 128), cited by the objectant, is not applicable to the situation here. This objection is, therefore, overruled and dismissed.

The next objection runs to the taking of commissions by the trustees upon gains in principal instead of upon the net difference between losses and gains. This objection is overruled and dismissed. The surrogates of this county have not followed the rule enunciated in *Matter of Corning* (160 Misc. 434). I hold that

receiving commissions may be computed upon realized gains in the sale of capital assets even though loss may have been incurred in the sale of other assets, the loss and gain eventually balancing themselves in the course of the trust account. (*Matter of Wallace,* N. Y. L. J. Aug. 10, 1937, p. 360.)

The third objection runs to the allowance of full commissions to the trustees upon the trusts created under paragraphs " sixth " and " fourteenth." It appears that from the inception of these trusts the trustees have, for convenience, handled them together as one consolidated trust, in view of the fact that they were for all practical purposes identical. In other words, Grace Wilson, the wife of decedent, received the income for life under both trusts, and upon her death the principal in each trust was directed to be divided in two equal parts, and the income therefrom paid to the two sons respectively. Although no complaint may be leveled at the trustees with respect to their treating the trusts as consolidated in order to facilitate their management, the expressed scheme of the testator may not thereby be affected. He in effect created two separate trusts by two separate clauses of his will, which were eventually to become four separate trusts. His purpose may not be questioned by the trustees, and their commissions must be computed in accordance with the provisions of the will. In *Matter of Exton* (159 Misc. 503), which was a case similar to the case at bar, the surrogate said (at p. 504): " This expressed scheme of the testator effected the creation of four separate trusts. Each trust capital has a value less than $100,000. The fact that the aggregate of all the trust capitals exceeds $100,000, even when coupled with the fact that presently the widow is living and receives the entire net income, does not alter the basic fact that the trusts are four in number and that for the purpose of a payment of commissions to the trustees must be dealt with separately. Consequently there is allowable to all the trustees only a single commission in the case of each trust. (*Matter of Johnson,* 170 N. Y. 139.) "

Except as herein noted, the trustees' account is allowed as stated.

Settle decree accordingly.